OPINION OF THE COURT
Joseph Harris, J.
Plaintiffs in this action for a declaratory judgment seek a judgment declaring unconstitutional chapters 241 and 279 of the Laws of 1994 enacted by the New York State Legislature in response to the determination of the United States Supreme Court declaring chapter 748 of the Laws of 1989 unconstitutional as in violation of the Establishment of Religion Clause of the First Amendment of the United States Constitution.
This case is first and foremost about handicapped children and the need to deliver to them, under their unique circumstances, the special public educational resources mandated by the Individuals with Disabilities Education Act (20 USC § 1400 et seq.) to be furnished to all handicapped children in the United States — and Education Law article 89 — and about religion only incidentally.
The antecedents of this case are stated in the plurality opinion of the United States Supreme Court authored by Justice Souter[1] in Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet; Board of Educ. of Monroe-Woodbury Cent. School Dist. v Grumet; Attorney-General of N. Y. v Grumet (Nos. 93-517, 93-527, 93-539), decided June 27, 1994 (512 US —, 114 S Ct 2481), and hereinafter referred to as Kiryas Joel I, to differentiate that case from the instant case hereinafter referred to as Kiryas Joel II. These antecedents are set forth in footnote 2 not for the purpose of rearguing Kiryas Joel I but as a reference to understand the new fact pattern of Kiryas Joel II[2]
*917 The opening skirmishes of this new battle have begun. Plaintiffs herein have applied for a temporary restraining order and for preliminary injunctive relief enjoining implementation of chapters 241 and 279 of the Laws of 1994 — more particularly, enjoining the funding and further operation of the Kiryas Joel Union Free School District pending determination of the constitutionality of these statutes.[3]
In order for a temporary restraining order (TRO) to be issued, the plaintiffs must first demonstrate (1) a clear likelihood of success on the merits; (2) irreparable injury if the TRO is not granted; and (3) that a balancing of the equities favors the issuance of a stay.
FACTS
On June 27, 1994, in Kiryas Joel I (512 US —, 114 S Ct 2481 [1994], supra), the United States Supreme Court affirmed the judgment of the New York State Court of Appeals which declared chapter 748 of the Laws of 1989 to be unconstitutional under the Establishment Clause of the First Amendment of the United States Constitution.
Chapter 748 of the Laws of 1989 read as follows:
"Section 1. The territory of the village of Kiryas Joel in the town of Monroe, Orange county, on the date when this act shall take effect, shall be and hereby is constituted a separate school district, and shall be known as the Kiryas Joel village school district and shall have and enjoy all the powers and duties of a union free school district under the provisions of the education law.
"§ 2. Such district shall be under the control of a board of education, which shall be composed of from five to nine members elected by the qualified voters of the village of Kiryas Joel, said members to serve for terms not exceeding five years.
"§ 3. This act shall take effect on the first day of July next succeeding the date on which it shall have become a law.”
*918 The flaw found in chapter 748 as perceived by the majority of the Supreme Court, mandating a declaration of its unconstitutionality under the Establishment Clause of the US Constitution, is its violation of the principle that "a State may not delegate its civic authority to a group chosen according to a religious criterion.” (Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet, 512 US, at —, 114 S Ct, at 2488 [plurality opn, Souter, J.], supra.)
Despite the fact that chapter 748 delegated power not by express reference to the religious beliefs of the Satmar community that exclusively comprised the Village of Kiryas Joel, but to the residents of the "territory of the village of Kiryas Joel” (L 1989, ch 748), Justice Souter found this forbidden effect as necessarily flowing from "the way the boundary lines of the school district divide[d] residents according to religious affiliation, under the terms of an unusual and special legislative act.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2489 [plurality opn, Souter, J.].)
Further bothersome to Justice Souter and the plurality Justices joining his opinion was the fact that the Kiryas Joel Village School District, created by a special and unusual act of the Legislature, gave reason for concern "whether the benefit received by the Satmar community is one that the legislature will provide equally to other religious (and nonreligious) groups. * * * The anomalously case-specific nature of the legislature’s exercise of state authority in creating this district for a religious community leaves the Court without any direct way to review such state action for the purpose of safeguarding a principle at the heart of the Establishment Clause, that government should not prefer one religion to another, or religion to irreligión * * * Because the religious community of Kiryas Joel did not receive its new governmental authority simply as one of many communities eligible for equal treatment under a general law, we have no assurance that the next similarly situated group seeking a school district of its own will receive one; unlike ah administrative agency’s denial of an exemption from a generally applicable law, which 'would be entitled to a judicial audience’ * * * a legislature’s failure to enact a special law is itself unreviewable.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2491.)
One of the general principles permeating the majority opinion in Kiryas Joel I (supra) is that civil power must be exercised in a manner neutral to one religion as against another and religion in general as against nonreligion. "[T]he *919 principle is well grounded in our case law, as we have frequently relied explicitly on the general availability of any benefit provided religious groups or individuals in turning aside Establishment Clause challenges. In Walz v. Tax Comm’n of New York City, 397 U.S. 664, 673, 90 S.Ct. 1409, 1413, 25 L.Ed. 697 (1970), for example, the Court sustained a property tax exemption for religious properties in part because the State had 'not singled out one particular church or religious group or even churches as such,’ but had exempted 'a broad class of property owned by nonprofit, quasi-public corporations.’ ” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2491 [plurality opn, Souter, J.].)
The majority opinion does not foreclose an accommodation of religion, so long as the government conduct is applied neutrally and the benefit provided is equally available to all religious and nonreligious entities similarly situated to that entity being afforded the benefit. " '[Government may (and sometimes must) accommodate religious practices and * * * may do so without violating the Establishment Clause.’ ” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2492 [plurality opn, Souter, J.].)
The fact that chapter 748 facilitates the practice of religion is not what renders it an unconstitutional establishment. (Kiryas Joel I, supra [plurality opn, Souter, J.].) "We do not disable a religiously homogeneous group from exercising political power conferred on it without regard to religion.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct 2493-2494 [plurality opn, Souter, J.].) Chapter 748 violates the Establishment Clause because it "fails the test of neutrality. It delegates a power * * * to an electorate defined by common religious belief and practice, in a manner that fails to foreclose religious favoritism. It therefore crosses the line from permissible accommodation to impermissible establishment.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2494 [plurality opn, Souter, J.].)
However, it is manifest in the majority opinion of Kiryas Joel I (supra), and nothing therein precludes, that the Village of Kiryas Joel may form its own school district provided that it results from enabling general legislation that is based on neutral and nonreligious criteria. This would dissolve the impermissible fusion of government and religion inherent in chapter 748.
The above, while manifest in the majority opinion, is most clearly enunciated in the opinion of Justice O’Connor concur *920 ring in part with the majority opinion and in the judgment of the Court. Justice O’Connor, opting to strike down chapter 748 because she felt that on its face it singled out a particular religious group for favorable treatment with no assurance that an equivalent group would be treated comparably, specifically distinguished the creation of a separate school district by special act of a Legislature from the creation of such a district pursuant to a general law which permits creation of school districts equally by municipalities under religion-neutral State prescribed criteria: "New York may, for instance, allow all villages to operate their own school districts. If it does not want to act so broadly, it may set forth neutral criteria that a village must meet to have a school district of its own; these criteria can then be applied by a state agency, and the decision would then be reviewable by the judiciary. A district created under a generally applicable scheme would be acceptable even though it coincides with a village which was consciously created by its voters as an enclave for their religious group. I do not think that the Court’s opinion holds the contrary.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2498.)[4]
Justice Kennedy did not subscribe to any portion of the majority opinion, but, rather, concurred in the judgment of the Court because he concluded that the New York State Legislature knew when it created the Kiryas Joel Village School District by special act that all residents of the Village were Satmar Hasidim and thus engaged in an act of religious gerrymandering.
Justice Kennedy contrasted the creation of the school district by special act with the constitutionality of the Village itself, noting that the Village had been created by its residents pursuant to a religion-neutral self-incorporation procedure authorized by a statute of general applicability, and opining that the Establishment Clause would not invalidate a voluntary association leading to the formation of a political community comprised of people sharing a common religious faith, where such result does not emanate from the drawing of explicit political boundaries by government on the basis of that common religious faith.[5]
*921 And, of course, the three dissenters in Kiryas Joel I (supra), having found no problem there respecting chapter 748 of the Laws of 1989 and the Kiryas Joel Village School District resulting therefrom, undoubtedly would have no problem with the constitutionality of chapters 241 and 279 of the Laws of 1994, which are the subject of Kiryas Joel II.

KIRYAS JOEL II

The Legislature enacted chapters 241 and 279 of the Laws of 1994 in response to the determination of the United States Supreme Court declaring chapter 748 of the Laws of 1989 unconstitutional.
The opinion of the Court was handed down June 27, 1994, and chapters 241 and 279 of the Laws of 1994 took effect with executive approval on July 6, 1994.
The question in Kiryas Joel II is whether chapter 241 is the general legislation, based upon religion-neutral criteria, that can meet the objections set forth in Kiryas Joel I (512 US —, 114 S Ct 2481, supra) to the creation of a Kiryas Joel Village School District.
Chapter 279 purports to repeal chapter 748 of the Laws of 1989 and abolish the Kiryas Joel Village School District while simultaneously allowing the school district to remain fully operational until such time as either a State court issued a mandate to implement the decision of the United States Supreme Court, or until the school district was merged with or replaced by another school district established pursuant to the provisions of chapter 241 of the Laws of 1994 (Education Law art 31), whichever occurred first. It was intended to maintain the status quo that existed prior to the Supreme Court’s decision in Kiryas Joel I (supra).
Chapter 241 of the Laws of 1994 amends Education Law § 1504, which already contained a mechanism whereby a supervising Board of Cooperative Education Services (BOCES) district superintendent could organize a new school district where the educational interests of the community required it. Chapter 241 expanded this authority beyond a single individual and vested similar power to organize a new union free school district consisting of the entire territory of such munici *922 polity in every municipality (defined as a city, town or village in existence as of the effective date of the amendment), located wholly within a single central or union free school district but whose boundaries are not coterminous with the boundaries of the preexisting school district, "whenever the educational interests of the community require[d] it” (L 1994, ch 241, § 1), provided that certain neutral and objective criteria relating to student enrollment and wealth were met.
Chapter 241 precludes the establishment of a separate school district thereunder unless "(i) the enrollment of the municipality seeking to organize such new school district equals at least two thousand children, and is no greater than sixty percent of the enrollment of the existing school district from which such new school district will be organized; (ii) such new school district would have an actual valuation per total wealth pupil unit at least equal to the statewide average; (iii) the enrollment of the existing school district from which such new school district will be organized equals at least two thousand children, excluding the residents of such municipality; and (iv) the actual valuation per total wealth pupil unit of such existing school district will not increase or decrease by more than ten percent following the organization of the new school district by such municipality.” (Education Law § 1504 [3] [a].)
Facially, at least, the conditions established by the Legislature for the creation of new school districts under chapter 241 are religion-neutral, reasonable, and appropriate, and effectuate a legitimate State function. The requirement that both the subdivided new school district and the remainder of the old school district each have at least 2,000 resident students, and that the enrollment of the new school district is no greater than 60% of the enrollment of the existing school district from which such new school district will be organized, addresses the State’s concern that each district be of sufficient size to assure the performance of their educational functions. The requirement that the actual valuation per total wealth pupil unit of both the new school district and the remainder of the old school district be at least equal to the State-wide average assures that each will have a sufficient property base to support school district operations. The requirement that the actual valuation per total wealth pupil unit within the existing school district not increase or decrease by more than 10% following the establishment of the new school district by the municipality is designed to avoid large swings in property *923 taxes in the former school district, as would be the case where there is a significant difference in relative wealth between the municipality and the remainder of the former school district.
These criteria clearly are rationally related to the ability of school districts to successfully organize for instructional purposes and to fund school district operations (see, Governor’s Mem approving L 1994, ch 241, Bill Jacket).
Further assuring a religion-neutral shield to the new legislation is the manner in which the new school district must be created. First, a majority of the residents of the municipality seeking to create the new school district must vote to organize the new school district. Second, the creation of the new school district must also be approved by a majority vote of the trustees or members of the board of education of the existing school district. Third, unless the board of the existing school district has approved the new school district by a two-thirds majority, then the new school district must be approved by a majority vote of the residents of the existing school district. The residents of the municipality seeking to organize the new school district may not participate in that vote.
Thus the creation of the new Kiryas Joel Village School District is not a veto-proof process controlled by the Satmar Hasidim of Kiryas Joel but a religion-neutral process controlled by the Monroe-Woodbury School District or its residents. The flaw leading to the demise of chapter 748 under the Establishment Clause — the drawing of political boundaries by government on the basis of religious faith — is avoided by chapter 241 from the start. In addition, as a general statute, enabling any municipality — religious or not — to create its own school district, chapter 241 avoids the concerns raised with chapter 748 — a case-specific statute — over the availability of judicial review.
Chapter 241 doesn’t result, at least facially and purposely, in giving Satmar handicapped children anything other than what all handicapped children are entitled to under the Individuals with Disabilities Education Act, and the laws of the State of New York (see, Education Law art 89). Satmar children cannot expect to be treated better than first-class citizens by reason of their religion, but not less than that because of their religion. Government cannot, in contravention of the "free exercise of religion” clause of the First Amendment, require Satmar children, or any other children, to cut off their earlocks and wear blue jeans in order to *924 receive benefits the law affords to all children similarly situated.
Plaintiffs contend that application of the criteria set forth in chapter 241 of the Laws of 1994 and the "latest data available currently in use” makes the Village of Kiryas Joel the only municipality that satisfies all of the criteria and thus "technically capable of taking advantage of the opportunity offered by Chapter 241”. This is disputed by defendants, noting that plaintiffs’ analysis of eligibility is not only flawed but irrelevant. Defendants aver, for example, that plaintiffs’ analysis uses 1990 data for the municipal pupil enrollment measure, which is not the more current figure required by chapter 241 ("the terms 'enrollment’, and 'actual valuation’ and 'total wealth pupil unit’ shall have the same meaning as those terms are defined in section three thousand six hundred two of this chapter”), namely, an annual enrollment count. Additionally, defendants aver that plaintiffs’ own papers evidence long-term growth rates in school districts that could result in current pupil enrollment figures significantly higher than the four-year-old 1990 census figures.
Thus there is at least a factual dispute between the parties that, even if relevant, must be resolved before chapter 241 could be declared unconstitutional. Further, the fact that only the Village of Kiryas Joel currently qualifies under the statute, even if true, is not dispositive of the constitutional question. It is possible that other municipalities might qualify in the future. Chapter 241 is a general statute — a permanent part of New York’s Education Law — religion-neutral and rationally related to a legitimate educational purpose, available "whenever the educational interests of the community require^] it.” It does not disappear in a cloud of smoke now that the Kiryas Joel Village School District, like a "phoenix from the ashes”, has sprung back to life.
All procedures necessary for the creation of the new Kiryas Joel Village School District under chapter 241 of the Laws of 1994 have currently been implemented. On July 25, 1994, the qualified voters of the Incorporated Village of Kiryas Joel, by a vote of 2,848 in favor, to 341 against,[6] voted to create a *925 Kiryas Joel Union Free School District, to succeed the former Kiryas Joel Village School District. On July 13, 1994, by a unanimous vote of its members, the defendant Board of Education of the Monroe-Woodbury Central School District duly adopted a resolution pursuant to which such Board "voted unanimously to endorse and support the resolution enacted by the Board of Trustees of the Village of Kiryas Joel on July 12, 1994, to establish a union free school district and thereby approve the creation of a Kiryas Joel Union Free School District pursuant to the provisions of Section 1504 (3) of the New York State Education Law”.
All other necessary steps were taken and on July 27, 1994, the new Kiryas Joel Village School District came into full force and effect and was fully operational.
LEMON v KURTZMAN (403 US 602) AND CHAPTER 241 OF THE LAWS OF 1994-GOVERNMENT AT PEACE WITH ITSELF
Regardless of the current viability of the tripartite test for analysis of the Establishment Clause introduced by the United States Supreme Court in Lemon v Kurtzman (403 US 602, 612 [1971], supra)[7] chapter 241, correcting the flaws of chapter 748, passes muster under said test.
Said test requires: "[fjirst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion * * * [and third], the statute must not foster 'an excessive government entanglement with religion’ ” (Lemon v Kurtzman, supra, at 612-613, quoting Walz v Tax Commn., 397 US 664, 674, supra).
The conversion of the case-specific chapter 748, conferring a special benefit only on the residents of the Village of Kiryas Joel, a community dominated by one religious sect, the Satinar Hasidim — namely, its own public school district — into the general statute which is chapter 241 — conferring that same benefit upon all municipalities in the State of New York, including the Village of Kiryas Joel — upon uniform religion- *926 neutral and educationally reasonable criteria — effectively resolves all the Establishment Clause concerns raised by the State courts and the United States Supreme Court in Kiryas Joel I (512 US —, 114 S Ct 2481, supra). While the focus of chapter 748 was on the religious needs of a particular religious sect, and brought about an impermissible " 'fusion of governmental and religious functions’ ” by delegating "important, discretionary governmental powers” to religious bodies, thus impermissibly entangling government and religion (Larkin v Grendel's Den, 459 US 116, 126-127, quoting Abington School Dist. v Schempp, 374 US 203, 222, and citing Lemon v Kurtzman, 403 US 602, supra), along with the "significant symbolic benefit to religion” associated with "the mere appearance of a joint exercise of legislative authority by Church and State” (Larkin v GrendeVs Den, supra, at 125-126), leading the Supreme Court to conclude that the statute had a " 'primary’ and 'principal’ effect of advancing religion” (Larkin v GrendeVs Den, supra, at 126), the focus of chapter 241 is on the educational needs of all the municipalities of New York State. While New York State is only incidentally in the religion business to the extent necessary to effect a reasonable accommodation of both religious and cultural differences, so long as it doesn’t establish a preference, it is fully in the education business, and absent a constitutional basis, courts ought not to interfere in the educational judgments of the "political” branches of government.
In its travels through the State courts, the decision of nisi prius in Grumet v Board of Educ. of Kiryas Joel Vil. School Dist. (supra) was affirmed by a divided Appellate Division on the ground that chapter 148 had the primary effect of advancing religion (Grumet v Board of Educ. of Kiryas Joel Vil. School Dist., 187 AD2d 16).
The New York Court of Appeals concluded in Grumet v Board of Educ. of Kiryas Joel Vil. School Dist., respecting chapter 748, that because both the school district’s public school population and its school board would be exclusively Hasidic, chapter 748 created a "symbolic union of church and State” that was "likely to be perceived by the Satmarer Hasidim as an endorsement of their religious choices, or by nonadherents as a disapproval” of their own. (81 NY2d 518, 529.) As a result, said the majority, the statute’s primary effect was an impermissible advancement of religious belief.
Chapter 241 suffers from none of these maladies. Kiryas Joel played a lead role in chapter 748 — indeed, the only role. *927 In chapter 241 it is merely a bit player, one among all the other municipalities of the State of New York, no longer the recipient of preferential treatment. The majority opinion of the United States Supreme Court states: "Where 'fusion’ is an issue, the difference lies in the distinction between a government’s purposeful delegation on the basis of religion and a delegation on principles neutral to religion, to individuals whose religious identities are incidental to their receipt of civic authority.” (Kiryas Joel I, 512 US —, —, 114 S Ct 2481, 2489, supra.) Chapter 241 successfully meets this test. The Supreme Court’s majority opinion states the same rule in another form: "We do not disable a religiously homogeneous group from exercising political power conferred on it without regard to religion.” (512 US, at —, 114 S Ct, at 2493-2494.) Chapter 241, wherein Kiryas Joel is merely one among many eligible to establish a school district, confers this eligibility upon Kiryas Joel merely as one among many, upon the same neutral criteria governing all municipalities, without regard to religion. That the residents of Kiryas Joel constitute a religiously homogeneous group is irrelevant and to deny them the same privileges given to other communities would unconstitutionally deny those residents of the free exercise of their religion.
As stated previously, the establishment of the Kiryas Joel Village School District gives to the handicapped (frequently severely so, ranging from mental retardation and deafness to spina bifida and cerebral palsy) Satmar children nothing more than what both Federal law and State law require for all handicapped children. The special education school (the only public school run by the Kiryas Joel Village School District) is specifically designed to provide a public secular education to handicapped students. While the Village’s private schools are profoundly religious and strictly segregated by sex, classes at this special education public school are co-ed and the curriculum secular. The school building is unadorned by religious symbols or markings. The school complies with the laws and regulations governing all other New York State public schools. There is no suggestion by anyone that this public school has made special adjustments to the religious needs of its students.
It has been contended by some that the supervisory function of the New York State Education Department necessary to keep religion out of public schools fosters an excessive entanglement between government and religion with respect to the *928 Kiryas Joel special education public school. But this is the same supervisory function exercised by the State Education Department with respect to all public schools in the State of New York, with no suggestion of excessive entanglement.
When all is said and done, the key to understanding the issue of the constitutionality of chapter 241 lies in an analysis of the process by which Kiryas Joel became an Incorporated Village. The Village was formed pursuant to a religion-neutral self-incorporation scheme. Under New York law (Village Law §§ 2-200, 2-202), a territory with at least 500 residents and not more than five square miles may be incorporated upon petition by at least 20% of the voting residents of that territory or by the owners of more than 50% of the territory’s real property. Aside from assuring that the petition complies with certain procedural requirements, the supervisor of the town in which the territory is located has no discretion to reject the petition. The residents of the town then vote upon the incorporation petition in a special election. Thus was the Incorporated Village of Kiryas Joel, with its 100% Satmar population, established. Because its establishment was pursuant to a religion-neutral general statute, no one has ever suggested that the political formation of the Village of Kiryas Joel was itself unconstitutional. Chapter 241 is the same type of statute as that under which the Village of Kiryas Joel was formed — a nonspecific, religion-neutral general statute — guided by reasonable educational consideration — open to all municipalities regardless of the theological or cultural practices of their residents.
Chapter 241 of the Laws of 1994 effectively cuts the Gordian Knot that has long kept government and religion at loggerheads. Chapter 241 is essentially a peace treaty with the Establishment Clause.
PRESUMPTION OF CONSTITUTIONALITY
In McKinney’s Consolidated Laws of NY, Book 1, Statutes § 150, the following rules of constitutional construction appear:
1. Statutes are presumed valid and constitutional and the one challenging the statute has the burden of showing the contrary beyond a reasonable doubt.
2. If there is reasonable doubt as to its validity an act must be upheld; it will be stricken down only when unconstitutionality is shown beyond a reasonable doubt.
*929 3. A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty and where the invalidity of the act is apparent on its face.[8]
4. A statute should be construed, if possible, to uphold its constitutionality.
5. The courts will avoid the imputation of bad faith to the Legislature.
MOTION FOR A TEMPORARY RESTRAINING ORDER
As earlier stated, to obtain a TRO it is plaintiffs’ burden to demonstrate (1) irreparable injury absent the grant of the TRO; (2) likelihood of success on the merits; and (3) that the balance of equities lies in plaintiffs’ favor and outweighs the public interest. (See, Kuttner v Cuomo, 147 AD2d 215 [3d Dept 1989], affd 75 NY2d 596 [1990]; Matter of Serth v New York State Dept. of Transp., 77 AD2d 957 [3d Dept 1980]; Delaware County Bd. of Supervisors v New York State Dept. of Health, 81 AD2d 968 [3d Dept 1981]; Matter of Armitage v Carey, 49 AD2d 496 [3d Dept 1975].)
Temporary restraining orders and preliminary injunctions are a drastic remedy which should be used sparingly. (See, Kuttner v Cuomo, supra.) Especially is this so when the preliminary relief sought is identical to the ultimate relief demanded. In the instant case, plaintiffs seek a TRO and a preliminary injunction preventing "any and all present and future action, or the expenditure of state money to implement Chapter 241, or allowing the Kiryas Joel Village School District to operate.” But for a declaration of unconstitutionality, this is exactly the relief sought by plaintiffs in their complaint.
Plaintiffs who seek preliminary relief providing all the relief sought as final judgment bear an even heavier burden in demonstrating their entitlement to such relief. "It is well *930 settled that temporary injunctions which in effect give the same relief which is expected to be obtained by final judgment, if granted at all, are granted with great caution and only when required by urgent situations or grave necessity, and then only on the clearest of evidence. It is the policy of this court not to grant such relief when the plaintiffs ultimate right involved is in doubt” (Russian Church of Our Lady of Kazan v Dunkel, 34 AD2d 799, 801 [2d Dept 1970]).
Such is the case here. Plaintiffs have not met their heavy burden of likelihood of ultimate success on the merits and demonstrating their entitlement to a temporary restraining order under the applicable standard.
Nor have plaintiffs demonstrated irreparable harm. To warrant preliminary injunctive relief, the irreparable harm alleged must be immediate, specific, nonspeculative and nonconclusory. (Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233 [1984].)
The only irreparable harm alleged by plaintiffs is that which they claim they will suffer as citizen-taxpayers, in the absence of injunctive relief, from "[a]ny state moneys [projected for the 1994-1995 school year as $564,696] unconstitutionally disbursed and expended toward the operation of the Kiryas Joel Village School District under the provisions of Chapter 241 of the Laws of 1994”, which plaintiffs allege would be unrecoverable.
But this is hardly irreparable harm inasmuch as this State aid will be disbursed for the education of the children of Kiryas Joel regardless of the school district they attend — the Kiryas Joel Village School District or the Monroe-Woodbury Central School District — and whether or not injunctive relief is granted. Simply put, the students of Kiryas Joel have a right, undisputed by plaintiffs, to a free public education. (See, Clark v Cuomo, 63 NY2d 96 [1984].)
Nor does the balance of equities favor plaintiffs. The children of Kiryas Joel are entitled to a public education and to State aid to assist in that education. Thus the dispute surrounding plaintiffs’ motion for injunctive relief is really more about where the children will be educated than about the expenditure of State money. While temporary injunctive relief would essentially serve no purpose to plaintiffs as citizen-taxpayers, an injunction would have serious disruptive effects on defendants and the children of Kiryas Joel.
Requiring the dissolution of the Kiryas Joel Village School *931 District while the case is pending would cause administrative expense and disruption for no practical reason and to no effect. Some of these are enumerated in article 31 of the Education Law (§ 1501 et seq.). Teachers from the dissolved school district may not be able to obtain employment; issues relating to housing of students, use and liability for buildings no longer needed, continuity of educational instruction and other like complex issues would need to be addressed immediately with no opportunity to create a plan and schedule for continuity and efficiency, and many of the handicapped children may refuse to attend the Monroe-Woodbury schools and thus go without the crucial services they need. All this where plaintiffs’ likelihood of success on the merits is, to say the most, problematical.
Significantly, all through the Kiryas Joel I (512 US —, 114 S Ct 2481, supra) litigation on the constitutionality of chapter 748 of the Laws of 1989, the status quo was maintained by every State court involved and by the United States Supreme Court itself. The lessons taught by chapter 748 inure to the benefit of the position and course taken by the defendants with respect to chapter 241 and argue strongly in favor of continuing the status quo to the end that the necessary education of the handicapped Kiryas Joel children will not be disrupted pending final resolution of the issues of Kiryas Joel II.
CONCLUSION
Plaintiffs having failed to meet their burden of demonstrating the likelihood of their success on the merits, irreparable injury to them absent the grant of preliminary relief, and that the balance of the equities lies in plaintiffs’ favor, the application by plaintiffs for a temporary restraining order is denied.[9]

. The opinion of the Court is contained in parts I, II-B, II-C and III of the opinion of Souter, J., in which Blackmun, Stevens, O’Connor and Ginsburg, JJ., joined. Blackmun, Stevens and Ginsburg, JJ., also joined in the opinion of Justice Souter respecting parts II (introduction) and II-A. Blackmun, J., filed a concurring opinion. Stevens, J., filed a concurring opinion, in which Blackmun and Ginsburg, JJ., joined. O’Connor, J., filed a concurring opinion concurring in part and concurring in the judgment. Kennedy, J., filed an opinion concurring in the judgment. Scalia, J., filed a dissenting opinion, in which Rehnquist, Ch. J., and Thomas, J., joined.

. "The Village of Kiryas Joel in Orange County, New York, is a *915 religious enclave of Satmar Hasidim, practitioners of a strict form of Judaism. The village fell within the Monroe-Woodbury Central School District until a special state statute passed in 1989 carved out a separate district, following village lines, to serve this distinctive population. 1989 N.Y.Laws, ch. 748. The question is whether the Act creating the separate school district violates the Establishment Clause of the First Amendment, binding on the States through the Fourteenth Amendment. Because this unusual act is tantamount to an allocation of political power on a religious criterion and neither presupposes nor requires governmental impartiality toward religion, we hold that it violates the prohibition against establishment * * *
"The Satmar Hasidic sect takes its name from the town near the Hungarian and Romanian border where, in the early years of this century, Grand Rebbe Joel Teitelbaum molded the group into a distinct community. After World War II and the destruction of much of European Jewry, the Grand Rebbe and most of his surviving followers moved to the Williamsburg section of Brooklyn, New York. Then, 20 years ago, the Satmars purchased an approved but undeveloped subdivision in the town of Monroe and began assembling the community that has since become the Village of Kiryas Joel. When a zoning dispute arose in the course of settlement, the Satmars presented the Town Board of Monroe with a petition to form a new village within the town, a right that New York’s Village Law gives almost any group of residents who satisfy certain procedural niceties. See N.Y.Village Law, Art. 2 (McKinney 1973 and Supp.1994). Neighbors who did not wish to secede with the Satmars objected strenuously, and after arduous negotiations the proposed boundaries of the Village of Kiryas Joel were drawn to include just the 320 acres owned and inhabited entirely by Satmars. The village, incorporated in 1977, has a population of about 8,500 today. Rabbi Aaron Teitelbaum, eldest son of the current Grand Rebbe, serves as the village rov (chief rabbi) and rash yeshivah (chief authority in the parochial schools).
"The residents of Kiryas Joel are vigorously religious people who make few concessions to the modern world and go to great lengths to avoid assimilation into it. They interpret the Torah strictly; segregate the sexes outside the home; speak Yiddish as their primary language; eschew television, radio, and English-language publications; and dress in distinctive ways that include headcoverings and special garments for boys and modest dresses for girls. Children are educated in private religious schools, most boys at the United Talmudic Academy where they receive a thorough grounding in the Torah and limited exposure to secular subjects, and most girls at Bais Rochel, an affiliated school with a curriculum designed to prepare girls for their roles as wives and mothers. See generally, W. Kephart & W. Zellner, Extraordinary Groups (4th ed. 1991); I. Rubin, Satmar, An Island in the City (1972).
"These schools do not, however, offer any distinctive services to handicapped children, who are entitled under state and federal law to special education services even when enrolled in private schools. Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (1988 ed. and Supp. IV); N.Y.Educ. Law, Art. 89 (McKinney 1981 and Supp.1994). Starting in 1984 the Monroe-Woodbury Central School District provided such services for the children of Kiryas Joel at an annex to Bais Rochel, but a year later ended that arrangement in response to our decisions in Aguilar v. Felton, 473 U.S. *916 402, 105 S.Ct. 3232, 87 L.Ed.2d 290 (1985), and School Dist. of Grand Rapids v. Ball, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985). Children from Kiryas Joel who needed special education (including the deaf, the mentally retarded, and others suffering from a range of physical, mental, or emotional disorders) were then forced to attend public schools outside the village, which their families found highly unsatisfactory. Parents of most of these children withdrew them from the Monroe-Woodbury secular schools, citing 'the panic, fear and trauma [the children] suffered in leaving their own community and being with people whose ways were so different,’ and some sought administrative review of the public-school placements. Board of Ed. of Monroe-Woodbury Central School Dist. v. Wieder, 72 N.Y.2d 174, 180-181, 531 N.Y.S.2d 889, 892, 527 N.E.2d 767, 770 (1988).
"Monroe-Woodbury, for its part, sought a declaratory judgment in state court that New York law barred the district from providing special education services outside the district’s regular public schools. Id., at 180, 531 N.Y.S.2d, at 892, 527 N.E.2d, at 770. The New York Court of Appeals disagreed, holding that state law left Monroe-Woodbury free to establish a separate school in the village because it gives educational authorities broad discretion in fashioning an appropriate program. Id., at 186-187, 531 N.Y.S.2d, at 895, 527 N.E.2d, at 773. The court added, however, that the Satmars’ constitutional right to exercise their religion freely did not require a separate school, since the parents had alleged emotional trauma, not inconsistency with religious practice or doctrine, as the reason for seeking separate treatment. Id., at 189, 531 N.Y.S.2d, at 897, 527 N.E.2d, at 775.
"By 1989, only one child from Kiryas Joel was attending Monroe-Wood-bury’s public schools; the village’s other handicapped children received privately funded special services or went without. It was then that the New York Legislature passed the statute at issue in this litigation, which provided that the Village of Kiryas Joel 'is constituted a separate school district, * * * and shall have and enjoy all the powers and duties of a union free school district * * *.’ 1989 N.Y.Laws, ch. 748.™ The statute thus empowered a locally elected board of education to take such action as opening schools and closing them, hiring teachers, prescribing textbooks, establishing disciplinary rules, and raising property taxes to fund operations. N.Y.Educ.Law § 1709 (McKinney 1988). In signing the bill into law, Governor Cuomo recognized that the residents of the new school district were 'all members of the same religious sect,’ but said that the bill was 'a good faith effort to solve th[e] unique problem’ associated with providing special education services to handicapped children in the village. Memorandum filed with Assembly Bill Number 8747 (July 24,1989), App. 40-41.
"Although it enjoys plenary legal authority over the elementary and secondary education of all school-aged children in the village, N.Y.Educ.Law § 3202 (McKinney 1981 and Supp.1994), the Kiryas Joel Village School District currently runs only a special education program for handicapped children. The other village children have stayed in their parochial schools, relying on the new school district only for transportation, remedial education, and health and welfare services. If any child without handicap in Kiryas Joel were to seek a public-school education, the district would pay tuition to send the child into Monroe-Woodbury or another school district nearby. Under like arrangements, several of the neighboring districts send their handicapped Hasidic children into Kiryas Joel, so that two thirds of the full-time students in the village’s public school come from outside. In all, *917 the new district serves just over 40 full-time students, and two or three times that many parochial school students on a part-time basis.” (Kiryas Joel I, 512 US, at —, 114 S Ct, at 2484-2486, supra.)

. This court has authority to rule on the application for a TRO pursuant to its issuance of the order to show cause herein on short notice; the application for a preliminary injunction, however, must be ruled upon by the IAS Judge to whom this case has been assigned for ultimate disposition —the Hon. Lawrence W. Kahn.

. It was this dictum of Justice O’Connor that became the genesis for chapters 241 and 279 of the Laws of 1994. Though it is dictum it is in accord with the principles enunciated in the majority opinion and tracks the rationale of the opinion.

. "But for the forbidden manner in which the New York Legislature *921 sought to go about it, the State’s attempt to accommodate the special needs of the handicapped Satmar children would have been valid.” (Kiryas Joel I, supra, 512 US, at —, 114 S Ct, at 2501 [concurring opn, Kennedy, J.].)

. It is interesting and instructive that the "monolithic” religious entity known as the Satmar Hasidim could not muster a unanimous vote in favor of the creation of the new Kiryas Joel Village School District. After the monumental effort to shake the constitutional world of this Nation, who were these 341 dissidents who deigned to defy the religious world of Kiryas Joel?

. As noted in Justice Scalia’s dissent, "it receive[d] only two 'see also’ citations, in the course of the opinion’s description of Grendel’s Den”, and Justice O’Connor urged that the test be abandoned as a " 'unitary approach’ to all Establishment Clause” analysis. (Kiryas Joel I, 512 US, at —, 114 S Ct, at 215, supra.)

. Courts, while the ultimate determiners of the constitutionality of a statute where there is conflict, are not exclusively endowed with the duty to preserve and protect the Constitution. Legislatures are charged with the same duty and have a great deal of expertise in this area. It would be unseemly and presumptuous for a nisi prius court to unnecessarily interject its judgment over that of the Legislature in determinations of constitutionality. That is more wisely left to the appellate courts.

. Once again, the issue of plaintiffs’ application for a preliminary injunction remains with the IAS Justice to whom this case is assigned.