OPINION OF THE COURT
 

 Kaye, J.
 

 This appeal centers on a struggle between the Board of Education of the Monroe-Woodbury Central School District, and parents and handicapped children of Kiryas Joel, an incorporated village of Satmarer Hasidim located within the school district. No one disputes that State and Federal law require the Board of Education to make special services available to these handicapped children. The conflict arises over
 
 where
 
 the services are to be offered — whether in the public schools, or in the religiously affiliated private schools of Kiryas Joel, or elsewhere.
 

 Despite past efforts at accommodation in the interests of meeting the unquestioned needs of these children, this is a litigation of "musts.” Both sides ask only what the law compels or requires, not what it permits. As the pleadings are framed, plaintiff Board of Education demands judgment declaring that the law compels it to furnish special education and related services of an instructional, remedial and therapeutic nature only in regular public school classes and programs, and declaring that it is without authority to provide such services separately. At the other extreme, defendants’
 
 *179
 
 counterclaim demands a declaration that the Board must furnish these services in classes conducted on the premises of the school the children attend for their normal educational instruction. Both sides have modified their demands somewhat during the course of the litigation: plaintiff would now recognize certain exceptions, defendants would accept services at a neutral site. We conclude, however, that on this record neither party’s position is compelled by law.
 

 Approximately 150 Satmarer children are the true subjects of this controversy, with handicaps such as mental retardation, deafness, speech and language impairments, emotional disorders, learning disabilities, Down’s syndrome, spina bifida and cerebral palsy. The record does not specify the precise services in issue, apparently encompassing occupational, physical and speech therapy, adaptive physical education, and education of the hearing-impaired and learning-disabled. Defendants urge that, apart from physical and mental handicaps, these children are further affected in their need to obtain special services by their language, and their social and cultural backgrounds, which are markedly different from the outside community.
 
 [1]
 

 Kiryas Joel is a community of Hasidic Jews. Apart from separation from the outside community, separation of the sexes is observed within the village. Yiddish is the principal language of Kiryas Joel; television, radio and English language publications are not in general use. The dress and appearance of the Hasidim are distinctive — the boys, for example, wear long side curls, head coverings and special garments, and both males and females follow a prescribed dress code. Education is also different: Satmarer children generally
 
 *180
 
 do not attend public schools, but attend their own religiously affiliated schools within Kiryas Joel. Boys are enrolled in the United Talmudic Academy (UTA) and girls in Bais Rochel, a UTA affiliate. With an apparent over-all goal that children should continue to live by the religious standards of their parents, "Satmarer want their school to serve primarily as a bastion against undesirable acculturation, as a training ground for Torah knowledge in the case of boys, and, in the case of girls, as a place to gather knowledge they wdll need as adult women.” (Rubin, Satmar: An Island in the City, at 140 [Quadrangle 1972].)
 
 [2]
 

 In the spring of 1984, the Board of Education met with representatives of Kiryas Joel to develop procedures for the classification and delivery of services to the handicapped children. After extensive negotiations, the Board agreed to furnish various services and programs, characterized as "health and welfare” services
 
 (see,
 
 Education Law § 912), at a "neutral site” within Kiryas Joel — actually an annex to Bais Rochel under the auspices of the UTA.
 

 A year later, however, reacting to
 
 Aguilar v Felton
 
 (473 US 402) and
 
 Grand Rapids School Dist. v Ball
 
 (473 US 373), the Board terminated those arrangements. It concluded that it could furnish services to defendant children only in the public schools, and it proceeded to place them there based on individual evaluations by the Board’s Committee on the Handicapped. After several months, defendant parents refused to permit the children to continue attending the public schools; a few sought administrative review of the recommended placements.
 

 In November 1985, the Board of Education commenced the present action for a declaration that it lacks statutory authority to provide the services except within regular public school classes. Plaintiff asserted that, pursuant to Education Law § 3602-c, a board is authorized to provide the services in issue to children attending nonpublic schools only in regular classes of the public school. Despite pending administrative review proceedings, defendants instead joined in the litigation, contending that the declaratory relief sought by the Board was
 
 *181
 
 inconsistent with its legal obligations, and demanding both an injunction directing plaintiff to furnish services in classes conducted on the premises of the school they attend for their normal educational instruction and damages equal to their own payments for substitute services. Except for private arrangements for a few of the children to continue receiving special services, apparently the other children have remained without them as the litigation has escalated.
 

 Both sides sought summary judgment. Defendants in their submissions urged that the regular public schools were inappropriate not only because of the need of many of the children for one-on-one services but also because of the panic, fear and trauma they suffered in leaving their own community and being with people whose ways were so different from theirs. They described specific instances of the children’s anxiety and distress, contending that parents felt compelled to stop sending them because the emotional toll outweighed the benefits of programs offered at the public school. They further stated that they were themselves financially unable to furnish the costly services to which they as taxpayers and their children were by law entitled, and which they urgently need.
 

 Plaintiff in its summary judgment submission disputed certain of defendant’s factual assertions, pointing to the progress made by Satmarer children who actually attended the public school programs. It detailed efforts to integrate the children and accommodate the parents (including Yiddish-speaking aides and bilingual reports), concluding that Satmarer Hasidic children could be appropriately educated in the public schools, and insisted that the Education Law § 3602-c (9) leaves no other option.
 

 Supreme Court directed plaintiff to provide the services to defendants at a site not physically or educationally identified with but reasonably accessible to defendant children (134 Misc 2d 658, 663). The court avoided interpreting section 3602-c (9), whether for inapplicability or invalidity, simply holding that the statute could not deny the children’s right under the Constitution and statutory and decisional law to services outside the regular public school classroom. Defendants’ claim for damages was dismissed as premature, owing to a failure to exhaust administrative remedies.
 

 The Appellate Division modified by granting plaintiff’s cross motion for summary judgment to the extent of dismissing defendants’ counterclaim and declaring that Education Law
 
 *182
 
 § 3602-c (9) requires that, to the maximum extent appropriate for the individualized educational needs of each child, plaintiff shall furnish special education and related services in the regular classes and programs of the public schools and not separately from public school students (132 AD2d 409, 417-418). In denying defendants’ counterclaim, the court concluded that the "neutral site” contemplated by Supreme Court’s order would in reality contravene the Establishment Clause of the First Amendment and would moreover usurp plaintiff’s authority under the Education Law to place the children according to their individual needs.
 

 I.
 

 We first consider plaintiff’s contention that this appeal, filed by defendants as of right on the ground that a substantial constitutional question is directly involved (NY Const, art VI, § 3; CPLR 5601 [b] [1]), must be dismissed for lack of jurisdiction.
 

 To support an appeal as of right on this basis, appellants must demonstrate that the ground for appeal is " 'directly and primarily an issue determinable only by our construction of the Constitution of the state or of the United States.’ ”
 
 (Matter of Haydorn v Carroll,
 
 225 NY 84, 88.) Even where a constitutional question may be otherwise involved, an appeal as of right does not lie if the decision appealed from was or could have been based upon some ground other than construction of the Constitution
 
 (see, Matter of Levy,
 
 255 NY 223). These principles require dismissal of defendants’ appeal.
 

 In addressing plaintiff’s request for declaratory relief, the Appellate Division declined to adopt the construction of Education Law § 3602-c (9) urged by either party. The court did, however, conclude that the statute — as interpreted — required that to the maximum extent appropriate, the special services at issue were to be offered in the public schools, not separately. The core of the Appellate Division decision was its construction of the pertinent statutes. While the court went on to find that Supreme Court’s order requiring plaintiff to provide services at a neutral site would contravene the Establishment Clause, the Appellate Division itself observed that "quite apart from the above discussion, the order and judgment must fall because it constitutes an improper usurpation of the plaintiff’s legislatively ordained authority pursuant to Education Law article 89 to evaluate and place handicapped
 
 *183
 
 children in special education programs according to their individual needs
 
 (see,
 
 Education Law § 4402).” (132 AD2d 409, 416-417,
 
 supra.)
 
 The constitutional discussion thus appears to have been incidental to the Appellate Division holding
 
 (see, Matter of Rueff,
 
 273 NY 530; Cohen and Karger, Powers of the New York Court of Appeals § 56, at 256 [rev ed]).
 

 Because appellants have failed to sustain their burden, the appeal filed as of right must be dismissed. However, there being novel and significant issues tendered for review, we grant the application for leave made during oral argument, and turn to a consideration of the merits of the appeal.
 

 II.
 

 Plaintiffs reading of Education Law § 3602-c is over-broad and must be rejected. That section does not mandate that a board can provide special services to private school handicapped children only in regular classes and programs of the public schools, and not elsewhere.
 

 Upon request of a parent, guardian or custodian of a handicapped student, boards of education of all school districts must offer services to pupils who are residents of the State and who attend nonpublic schools in their districts (Education Law § 3602-c [2]). "Services” include "education for students with handicapping conditions, and counseling, psychological and social work services related to such instruction provided during the regular school year for pupils enrolled in a nonpublic school located in a school district, provided that such instruction is given to pupils enrolled in the public schools of such district.” (Education Law § 3602-c [1] [a].) "Education for students with handicapping conditions” is further defined to mean special programs designed to serve "persons who meet the definition of children with handicapping conditions set forth in subdivision one of section forty-four hundred one of this chapter.” (Education Law § 3602-c [1] [d].) No one disputes that defendant children, as well as the services in controversy, are within the sweep of section 3602-c. Subdivision (9) provides: "Pupils enrolled in nonpublic schools for whom services are provided pursuant to the provisions of this section shall receive such services in regular classes of the public school and shall not be provided such services separately from pupils regularly attending the public schools.” As the Appellate Division analysis recognizes (132 AD2d 409, 413-414,
 
 supra),
 
 this is not a statute that can be read without consideration of
 
 *184
 
 its history and context
 
 (see, e.g., Doctors Council v New York City Employees’ Retirement Sys.,
 
 71 NY2d 669, 675-676), because of its indefiniteness and facial inconsistency with other laws on the same subject.
 

 While insisting in its complaint that section 3602-c (9) must be read literally as the exclusive vehicle for providing special services to handicapped private school students, plaintiff now embraces the Appellate Division’s modification of that proposition, urging that, to the maximum extent possible — and consistent with other laws mandating services at specific places, and with individual exceptions for hardship — section 3602-c compels, and authorizes, school districts to offer programs and services to private school handicapped students only in regular public school classes and programs, and not elsewhere. We disagree.
 

 We conclude that section 3602-c authorizes services to private school handicapped children and affords them an option of dual enrollment in public schools, so that they may enjoy equal access to the full array of specialized public school programs; if they become part-time public school students, for the purpose of receiving the special services, the statute directs that they be integrated with other public school students, not isolated from them. The statute does not limit the right and responsibility of educational authorities in the first instance to make placements appropriate to the educational needs of each child, whether the child attends public or private school. Such placements may well be in regular public school classes and programs, in the interests of mainstreaming or otherwise
 
 (see,
 
 Education Law § 4401-a), but that is not a matter of statutory compulsion under section 3602-c.
 

 Supreme Court described section 3602-c (9) as a "modest, if not obscure” law (134 Misc 2d 658, 661,
 
 supra).
 
 Indeed, since its enactment in 1974, Education Law § 3602-c has remained uncontroversial. It was adopted — as part of the Education Law article pertaining to apportionment of moneys — in the wake of
 
 Lemon v Kurtzman
 
 (403 US 602) and
 
 Committee for Pub. Educ. v Nyquist
 
 (413 US 756), which struck down New York laws providing financial assistance programs to nonpublic schools because they had the primary effect of advancing religion.
 

 The statute was plainly designed to increase benefits afforded to handicapped children in private schools — not to limit them — by offering these students access to all of the special
 
 *185
 
 programs provided for public school students and by integrating them generally with public school students. As the Governor explained in his approval memorandum, "This bill * * * is designed to assure access for all high school students in this State to specialized vocational and occupational education programs and educational programs for students with handicapping conditions * * * Many public school districts have long been able to offer a variety of occupational and vocational education courses, and special education programs for pupils with handicapping conditions. Non-public schools, with smaller enrollments and more limited facilities and fiscal resources, have generally been unable to provide such specialized offerings, which frequently require small classes, special equipment, and highly specialized staffing. This bill will enable non-public school students to join with our public school students in sharing the benefits from such public programs.” (Governor’s Mem of Approval, 1974 McKinney’s Session Laws of NY, at 2102;
 
 see also,
 
 1974 NY Legis Ann, at 109.) The Legislature’s efforts to accomplish these purposes were at the time both heralded as affording handicapped children greater educational opportunity and criticized as unduly costly for districts having a large concentration of nonpublic school students
 
 (see,
 
 Governor’s Bill Jacket, L 1974, ch 593). In the legislative history, there is no suggestion that the statute was intended to introduce into the regulatory scheme a compulsion that programs be concentrated solely in the public schools, and it was not offered as an economy or efficiency measure; indeed, the contrary concern was expressed — that the benefits being added by the new provision would be costly
 
 (see, e.g.,
 
 letter from Mayor Abraham D. Beame, Governor’s Bill Jacket, L 1974, ch 593).
 

 The view that the statute affords an added double-enrollment option — rather than dictating the sole or presumptive means for affording services — is in harmony with the scheme of State and Federal regulation pertaining to services for handicapped school children.
 

 The Federal Education of the Handicapped Act (20 USC § 1400
 
 et seq.)
 
 declares the congressional objective that each handicapped child is to have available a free appropriate public education, with special education and related services— including classroom instruction, instruction in physical education, home instruction and instruction in hospitals and institutions — available to meet a child’s unique needs (20 USC § 1401 [16]). To the extent consistent with the number and location of
 
 *186
 
 handicapped children within a State enrolled in private schools, "provision is [to be] made for [their] participation” in such services. (20 USC § 1413 [a] [4] [A].) The regulations of the United States Department of Education specify, in particular, that while the public agency is not required to pay for a child’s private school education, it is to make services available to the nonpublic school children; each local educational agency is to "provide special education and related services designed to meet the needs of private school handicapped children residing in the jurisdiction of the agency.” (34 CFR 300.452.)
 

 To implement the goals declared by Federal law, New York has adopted an extensive statutory and regulatory scheme
 
 (see generally,
 
 Education Law art 89; 8 NYCRR part 200). Several pertinent points may be distilled from these laws.
 
 First,
 
 the paramount principle that guides State law is concern for a handicapped child’s educational needs, whether in public or private school. All handicapped children residing within a school district are to be afforded suitable educational opportunities according to their individual needs, in a manner that enables them to participate in regular education services when appropriate
 
 (see, e.g.,
 
 Education Law §§ 4401-a, 4402 [2] [a]; 8 NYCRR §§ 200.1, 200.6).
 
 Second,
 
 the statutes and regulations vest in State educational authorities broad responsibility for tailoring programs to a child’s individual needs in the least restrictive environment, considering the appropriateness of the resources of the regular education program
 
 (see, e.g.,
 
 Education Law §§ 4401-a, 4402, 4403).
 
 Third,
 
 to this end, the authorities have a wide choice of programs and services, including home instruction, itinerant teachers (Education Law § 4401 [2] [a]), and counseling and psychological services (Education Law §4401 [2] [k]). The Education Law permits contracts with private facilities, even out-of-State facilities, where such services are deemed necessary for a child’s appropriate education (Education Law § 4407). From the scope of services and programs, it is plain that not all services can even be furnished in "regular classes of the public school” (Education Law § 3602-c [9]).
 

 While the Appellate Division reading of the Education Law § 3602-c would recognize limited exceptions from the general mandate for public school services to avoid inconsistency and individual hardship, we believe the better reading is that this provision in the first instance imposes no such mandate but leaves educational authorities to fashion an appropriate pro
 
 *187
 
 gram for each child within statutory guidelines and constitutional constraints
 
 (see, e.g.,
 
 NY Const, art XI, § 3;
 
 Lemon v Kurtzman,
 
 403 US 602,
 
 supra).
 

 Our reading of the statute also appears to be consonant with the State Education Department’s interpretation
 
 (see, Matter of Mutual Life Ins. Co. v State Tax Commn.,
 
 32 NY2d 348, 353-354). Several letters from counsel for the Department have been made part of this record, none of them opining that section 3602-c mandates public school placement. In response to a question put by plaintiffs counsel, counsel for the Department explained that section 3602-c governs the option of dual enrollment, that where it found compelling individual or group reasons for doing so a board of education otherwise might elect to provide services elsewhere to private school handicapped children. He wrote:
 
 "In such a case, the provisions of § 3602-c would not be invoked because there would have been no parental request for 'dual enrollment’ in a public school pursuant to that section. Rather, the board of education would be exercising its authority and discharging its responsibilities pursuant to 34 CFR § 300.452.”
 
 (Emphasis added.) Similarly, the Commissioner of Education has declined to construe the statute as the blanket mandate plaintiff suggests. In
 
 Matter of Board of Educ.
 
 (24 Ed Dept Rep 155 [Oct. 31, 1984]), the Commissioner concluded that "Section 3602-c relates solely to so-called 'dual enrollment’ in public schools for specified purposes by youngsters who otherwise attend nonpublic schools. Subdivision 9 of that section pertains solely to youngsters who are dually enrolled”.
 
 (Id.,
 
 at 159-160;
 
 see also, Matter of Handicapped Child,
 
 21 Ed Dept Rep 708 [June 16, 1982];
 
 Matter of Handicapped Child,
 
 19 Ed Dept Rep 463 [Mar. 7, 1980].)
 

 We therefore conclude that plaintiffs contention should be rejected: it is neither compelled to make services available to private school handicapped children only in regular public school classes and programs, nor without authority to provide otherwise.
 

 III.
 

 That plaintiff may be free of the claimed restraint of Education Law § 3602-c (9) does not, however, establish defendants’ contention that the services must be provided within their own schools, or even at a neutral site.
 

 Defendants’ contention that State and Federal statutes
 
 *188
 
 mandate provision of services to nonpublic school children on the premises of the schools they normally attend, requires little discussion. Without reaching any constitutional implications of the contention
 
 (see, e.g.,
 
 132 AD2d 409, 414-416,
 
 supra),
 
 there is no such statutory requirement. Indeed, as the foregoing discussion indicates, such a general compulsion would be inconsistent with the regulatory scheme, which contemplates that the placement of children in programs will be guided generally by their individual educational needs in the least restrictive environment. This statutory claim advanced by defendants is therefore without merit.
 

 Similarly, on this record defendants have been denied no constitutional right by the children’s public school placements.
 

 Considerable doubt has been voiced by the Appellate Division (132 AD2d 409, 416,
 
 supra),
 
 by plaintiff and by the New York State School Boards Association as
 
 amicus,
 
 that the alternate setting contemplated by defendants could ever be a genuinely neutral, public site, free of identification with defendants’ beliefs. The point is made that the fear and trauma of leaving the language, life-style and environment of Kiryas Joel and mixing with others — defendants’ stated grounds for refusing to attend the public schools — of necessity mean that any acceptable alternate site designated to address those concerns could never be truly neutral. We see an even more fundamental flaw in defendants’ position: on this record, defendants’ statutory entitlement to special services does not carry with it a constitutional right to dictate where they must be offered.
 

 Defendants’ constitutional “right” to services in their own schools or at a neutral site, as asserted in this court, rests on their contention that the Board’s public school placements interfere with the free exercise of their sincere religious beliefs guaranteed by the State and Federal Constitutions (NY Const, art I, § 3; US Const 1st Amend), that compelling the children to attend regular public school classes and programs forces them to choose between following the precepts of their religion and foregoing benefits on the one hand, and accepting benefits while violating their religious beliefs on the other
 
 (see, e.g., Lyng v Northwest Indian Cemetery Protective Assn.,
 
 485 US —, 108 S Ct 1319 [Apr. 19, 1988];
 
 Hobbie v Unemployment Appeals Commn.,
 
 480 US 136;
 
 Sherbert v Verner,
 
 374 US 398).
 

 But that is not the claim defendants asserted and supported
 
 *189
 
 below. Defendants in their submissions to the trial court insisted that, as a class, they should be exempted from public school placements only for
 
 nonreligious
 
 reasons — most particularly because of the emotional impact on the children of traveling out of Kiryas Joel. They made no showing that any sincere religious beliefs were threatened by requiring limited public school attendance, only for special services
 
 (see, e.g., Wisconsin v Yoder,
 
 406 US 205, 209-210). Thus, there is no basis here for the constitutional right now asserted by defendants and found by the trial court. Whether a school board might, as a matter of choice, offer certain services to defendant children at a neutral site (as plaintiff allegedly is doing for services to other children) without running afoul of the Establishment Clause (US Const 1st Amend;
 
 see also,
 
 NY Const, art XI, § 3) is a question not presented by this case, because no such proposal is before us.
 
 [3]
 

 We therefore conclude that the Appellate Division correctly denied defendants’ motion for summary judgment and dismissed their counterclaim: they have demonstrated no right to the relief they request.
 

 IV.
 

 Accordingly, the order of the Appellate Division should be modified by declaring that plaintiff is not compelled by Education Law § 3602-c to offer all services available to defendant children only in the regular classes and programs of its public schools, and it is not without authority to provide otherwise; nor is plaintiff on this record compelled by law to offer
 
 *190
 
 defendants such services in the classes and programs of their nonpublic schools or at a neutral site. Except as so modified, the Appellate Division order should be affirmed, without costs.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Appeal taken as of right dismissed, without costs, upon the ground that no substantial constitutional question is directly involved. Oral application for leave to appeal granted. Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.
 

 [1]
 

 . The Satmarer Hasidim have been involved in two recent disputes raising similar considerations in the Federal courts. In
 
 Parents’ Assn. v Quinones
 
 (803 F2d 1235), the Second Circuit preliminarily enjoined implementation of a plan by the Board of Education to provide federally funded remedial education for handicapped girls from Beth Rochel school by closing off nine classrooms of a public school, and dedicating them to the use of the Hasidic girls; the teachers were all to be female Yiddish-speaking public school teachers. The court found a substantial likelihood that parents of public school students would succeed in their challenge to the arrangement under the Establishment Clause of the First Amendment to the Federal Constitution. In
 
 Bollenbach v Board of Educ.
 
 (659 F Supp 1450), female bus drivers complained that the district had violated the Establishment Clause by accommodating the religious beliefs of United Talmudic Academy students when it removed senior female bus drivers from transportation runs involving male students. The District Court found that the deployment of only male drivers had the primary effect of advancing religious beliefs.
 

 [2]
 

 . This treatise was submitted by
 
 plaintiff
 
 to the trial court, and the quoted language is found in the court’s opinion; defendants have neither affirmed nor disavowed its accuracy or currency. Indeed, in their submissions, they make no reference to their religious beliefs or practices, only their life-style and environment.
 

 [3]
 

 . While the principle of separation of Church and State is deep-rooted, the actual wall of separation "is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship.”
 
 (Lemon v Kurtzman,
 
 403 US 602, 614.) That there is no litmus test for determining which services may be rendered by a public body to parochial school students and which may not, is perhaps best illustrated by
 
 Wolman v Walter
 
 (433 US 229), a Supreme Court decision with so many categories and splintered votes that it can only be read with a scorecard.
 

 It may well be that certain of the services in controversy could be furnished to defendants at neutral sites if plaintiff determined to do so
 
 (see, Wolman v Walter,
 
 433 US 229,
 
 supra).
 
 This declaratory judgment action poses only the abstract question whether services
 
 must
 
 be furnished in public schools (as plaintiff insists) or
 
 must
 
 be furnished separately (as defendants insist); the actual services involved are not even fully specified. We therefore have no occasion to — nor could we — determine where any particular services could be rendered in conformity with constitutional principles.