*646 OPINION OF THE COURT
Lawrence E. Kahn, J.
The Satmar Hassidim once again find litigation to be a concomitant to their separate lives in the Village of Kiryas Joel. The instant controversy has its genesis in a conflict that has traveled through the courts of this State, to the State Legislature, once again through the State courts, to the United States Supreme Court, again to the State Legislature, and now once again, to this court.* The conflict itself juxtaposes the need to protect the separation of church and State, a constitutional principle that defines our civil life, against the fervent desire of the Satmar Hassidim to lead a religious life completely separate from their secular surroundings.
The history and background of the Satmars are well described in the recent United States Supreme Court case Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet (512 US —, 114 S Ct 2481, 2485) (hereinafter Kiryas Joel) and only the operative facts will be recounted here.
The Incorporated Village of Kiryas Joel is located in the Town of Monroe in Orange County. It is a homogenous religious enclave whose citizens are all members of the Satmar Hassidim sect, which prescribes a strictly religious way of life for its adherents. Most all Satmar children attend private parochial academies. The Satmar children involved in this controversy are the handicapped who suffer from a range of disabilities. It is these children that the Satmars cannot provide for in their parochial schools. For these children, the Satmars turn to the State of New York for the care and education the children are entitled by law to receive. (20 USC § 1400 et seq.; Education Law art 89.)
The Monroe-Woodbury Central School District had provided public schooling to these children at locations outside Kiryas Joel. This was eventually deemed unsatisfactory by most of the children’s parents. Most of these children were withdrawn from the secular schools outside the Village because of "the panic, fear and trauma [the children] suffered in leaving their own community and being with people whose ways were so different.” (Board of Educ. v Wieder, 72 NY2d 174, 180-181.)
The State Legislature entered the controversy by enacting chapter 748 of the Laws of 1989 which created the Kiryas Joel *647 Village School District to be comprised of the territory of the Village of Kiryas Joel.
Chapter 748 of the Laws of 1989 is as follows:
"Section 1. The territory of the village of Kiryas Joel in the town of Monroe, Orange county, on the date when this act shall take effect, shall be and hereby is constituted a separate school district, and shall be known as the Kiryas Joel village school district and shall have and enjoy all the powers and duties of a union free school district under the provisions of the education law.
"§ 2. Such district shall be under the control of a board of education, which shall be composed of from five to nine members elected by the qualified voters of the village of Kiryas Joel, said members to serve for terms not exceeding five years.
"§ 3. This act shall take effect on the first day of July next succeeding the date on which it shall have become a law.”
The school district created under chapter 748 thereafter commenced providing special education services to the handicapped children of Kiryas Joel and other handicapped children from beyond the Village. Subsequently, the United States Supreme Court, in a decision which included four concurring opinions and one dissenting opinion, found the statute unconstitutional as a violation of the Establishment Clause. (Kiryas Joel, 512 US, at —, 114 S Ct, at 2484, supra.) A plurality of the Court found the Legislature’s act to be substantially equivalent to defining a political subdivision and hence the qualification for its franchise by a religious test, resulting in a purposeful and forbidden " 'fusion of governmental and religious functions.’ ” (Kiryas Joel, 512 US, at —, 114 S Ct, at 2490, supra, citing Larkin v Grendel's Den, 459 US 116, 126.)
Within days after the Kiryas Joel decision (supra) was handed down by the Supreme Court, the New York Legislature enacted chapters 241 and 279 of the Laws of 1994 in response. Chapter 279 effects a repeal of chapter 748 of the Laws of 1989 and abolishes the Kiryas Joel Village School District. Among other transition provisions, the statute provided for the continued operation of the District in its current form until formally replaced or superseded by another school district pursuant to article 31 of the Education Law. During the transition period, the territory of the former Kiryas Joel Village School District (KJVSD) was deemed to be part of the *648 Monroe-Woodbury Central School District (the district from whence the KJVSD originally came).
Chapter 241 of the Laws of 1994 amends section 1504 of the Education Law, to permit every city, town or village, in existence as of the effective date of the amendment, wholly within a single central or union free school district, but whose boundaries are not coterminous with the boundaries of such school district, to organize a new union free school district consisting of the entire territory of such municipality whenever the educational interests of the community require it if certain additional requirements are fulfilled. (See, Education Law § 1504 [3].) The additional requirements to be met by a municipality are: (1) the enrollment of the municipality seeking to organize such new school district equals at least 2,000 children, and is no greater than 60% of the enrollment of the existing school district from which such new school district will be organized; (2) such new school district would have an actual valuation per total wealth pupil unit at least equal to the State-wide average; (3) the enrollment of the existing school district from which such new school district will be organized equals at least 2,000 children, excluding the residents of such municipality; and (4) the actual valuation per total wealth pupil unit of such existing school district will not increase or decrease by more than 10% following the organization of the new school district by such municipality. (See, Education Law § 1504 [3] [a].)
Days after chapter 241 was enacted, the Monroe-Woodbury Board of Education voted unanimously to approve the creation of a new school district for the Village of Kiryas Joel under the new law. Less than one month after the United States Supreme Court declared chapter 748 unconstitutional, the residents of Kiryas Joel approved the creation of the new school district by a vote of 2,848 in favor and 341 against creating a new district. Two days after the vote, the new school district was a legal entity.
Immediately, the plaintiffs herein commenced the instant action which seeks to enjoin the implementation of the statute and seeks a declaration that chapter 241 of the Laws of 1994 is unconstitutional in violation of the Establishment Clause of the First Amendment of the United States Constitution and article XI, § 3 of the New York Constitution. The plaintiffs’ request for a temporary restraining order was denied. (See, Grumet v Cuomo, 162 Misc 2d 913 [Harris, J.].) The case is *649 now presented to this court on cross motions for summary judgment pursuant to CPLR 3212.
The first question to be addressed is that of standing. (County of Rensselaer v Regan, 173 AD2d 37.) Plaintiffs Grumet and Hawk sue in their capacities as citizen taxpayers. The uncontroverted allegations in the complaint clearly show that each plaintiff meets a definition of citizen taxpayer contained in State Finance Law § 123-a and, therefore, they have statutory standing to maintain an action for declaratory or injunctive relief to prevent the unconstitutional disbursement of State funds. (Grumet v Board of Educ., 187 AD2d 16, 20.) It is undisputed that the new school district, formed pursuant to chapter 241, is the recipient of State funds and, therefore, that statute can be challenged in a citizen taxpayer action. (Supra.)

The Plaintiffs’ Claims Under The Federal Constitution

"The First Amendment’s guarantee that 'Congress shall make no law respecting an establishment of religion’ * * * is more than a pledge that no single religion will be designated as a state religion.” (Grand Rapids School Dist. v Ball, 473 US 373, 381 [citations omitted].) The Establishment Clause "is also more than a mere injunction that governmental programs discriminating among religions are unconstitutional.” (Supra [citations omitted].) As a guarantee of one of this Nation’s founding principles, it "proscribes 'sponsorship, financial support, and active involvement of the sovereign in religious activity.’ ” (Supra, quoting Committee for Pub. Educ. & Religious Liberty v Nyquist, 413 US 756.) The States are equally bound by this proscription because the guarantees of the Establishment Clause are applied to the States by virtue of the Fourteenth Amendment of the US Constitution. (Everson v Board of Educ., 330 US 1.)
The case of Lemon v Kurtzman (403 US 602) provides the test to be applied in scrutinizing the constitutionality of statutes "involving the sensitive relationship between government and religion in the education of our children.” (Grand Rapids School Dist. v Ball, 473 US, at 382-383, supra.) Admittedly, the three-part test of Lemon was not applied in Kiryas Joel (512 US —, 114 S Ct 2481, supra), and the state of the Supreme Court’s Establishment Clause jurisprudence appears to be in flux. (See, supra, at 2498-2499 [concurring opn of O’Connor, J.].) However, as stated by Justice White, writing *650 for the majority in Lamb’s Chapel v Center Moriches Union Free School Dist, "[tjhere is a proper way to inter an established decision and Lemon, however frightening it might be to some, has not been overruled” (508 US —, —, n 7, 113 S Ct 2141, 2148, n 7). Indeed, Justice Scalia, in remarking on the role of the Lemon test in his dissenting opinion in Kiryas Joel, observed that the lower courts "are not free to ignore Supreme Court precedent at will.” (Kiryas Joel, 512 US, at —, 114 S Ct, at 2515, supra.) Absent an announced abandonment of Lemon by the Supreme Court, it remains the law and shall be applied. Although criticized, the Lemon case provides a sound analytical framework and there is clearly no consensus on a substitute.
At the outset of the analysis, it is noted that the school being operated by the KJVSD is a public and by no means sectarian institution. There is no evidence in the record to suggest that the school is operated in a manner other than that required of a New York public school.
Under the Lemon standard, "a court may invalidate a statute only if it is motivated wholly by an impermissible purpose * * * if its primary effect is the advancement of religion * * * or if it requires excessive entanglement between church and state.” (Bowen v Kendrick, 487 US 589, 602.)
The first prong of Lemon (supra) requires an evaluation of the secular purpose of an enactment. (See, Bowen v Kendrick, supra, at 603-604.) The identifiable secular purpose here is to afford municipalities, whose residents believe it in their best educational interests, the opportunity to create a new school district where certain religion-neutral and objective requirements are satisfied. Chapter 241 is a general law drawn in neutral terms, and makes a seemingly innocuous change to the Education Law. However, there is no doubt that the Legislature had the conundrum of Kiryas Joel (supra) in mind when the statute was enacted. Even assuming that the law was tailored to permit the KJVSD to become reconstituted, there is nothing to suggest that the Legislature was "entirely motivated by a purpose to advance religion.” (Wallace v Jaffree, 472 US 38, 56.) The statute did not name or create a KJVSD. It merely gave that municipality along with any other qualifying municipality the opportunity to create a school district if warranted and if all statutory requirements were satisfied. Indeed, it appears that the Legislature, in enacting chapter 241, recognized that the current general policy of continually consolidating school districts must be *651 allowed a procedure for exceptions in the event a unique educational challenge confronts a municipality.
The conditions the Legislature has established for municipalities in chapter 241 are manifestly nonreligious and reflect reasonable and legitimate State education policy concerns. The statute addresses the concern that the new and old districts have sufficient size to ensure the performance of their educational functions, by requiring at least 2,000 resident students in the new and old districts. (See, Education Law § 1504 [3] [a] [i].) The statute also protects against large swings in property taxes after the creation of a new district, while ensuring that both districts have a sufficient property base to support their operations. (See, Education Law § 1504 [3] [a] [ii], [iv].) None of these statutory provisions give any credence to the contention that the purpose of chapter 241 was entirely or even primarily to advance religion. (See, ibid.)
The New York Legislature has neither "endorse[d] [n]or disapprove^] of religion” in the enactment of chapter 241 but has, at most, permissibly accommodated the Satmars without singling them out for favorable treatment. (Kiryas Joel, 512 US, at —, 114 S Ct, at 2500, supra.) " 'That government must remain neutral in matters of religion does not foreclose it from ever taking religion into account’.” (Supra, at 2492, quoting School Dist. v Schempp, 374 US 203, 299.) "Religious needs can be accommodated through laws that are neutral with regard to religion.” (Supra, at 2496 [concurring opn of O’Connor, J.].) In marked contrast to chapter 748’s purposeful conferral of a special benefit on the Satmars, chapter 241 provides a religion-neutral mechanism for all qualifying municipalities to meet local or unique educational needs by creating their own school districts. Thus, the Legislature’s primary purpose in enacting chapter 241 can neither be seen as religious nor as a "sham” but instead as valid and secular with, at most, an ancillary purpose of accommodating religion. (Wallace v Jaffree, 472 US 38, 64, supra; Zobrest v Catalina Foothills School Dist., 509 US —, —, 113 S Ct 2462, 2469.)
Turning to the second prong of Lemon, the principle and primary effect of chapter 241 is the expansion of a municipality’s ability to meet its local educational needs, and in this case, to allow the Village of Kiryas Joel to create its own school district and provide for the public education of the Village’s handicapped children. (Lemon v Kurtzman, 403 US 602, 612, supra.) The statute does not "convey[ ] a message of government endorsement or disapproval” of the Satmar sect *652 or any religion. (Grand Rapids School Dist. v Ball, 473 US 373, 389, supra.) There is no "symbolic union of church and state * * * likely to be perceived by adherents of the controlling denominations as an endorsement, and by nonadherents as a disapproval, of their individual religious choices.” (Supra, at 390.) The legislation does not "aid one religion, aid all religions, or prefer one religion over another.” (Everson v Board of Educ., 330 US, at 15, supra), and maintains the requisite "course of neutrality.” (Grand Rapids School Dist. v Ball, 473 US, supra, at 382.) Chapter 241 neither constitutes "direct, state-funded efforts to indoctrinate youngsters in specific religious beliefs” (Grand Rapids School Dist. v Ball, 473 US, supra, at 389), nor "fosters a close identification of [the State government’s] powers and responsibilities with those of any — or all — religious denominations.” (Supra.) Chapter 241 does not "confer any imprimatur of state approval on religious sects or practices” (Widmar v Vincent, 454 US 263, 274) as chapter 748 had when it explicitly created the KJVSD coterminous with the Incorporated Village of Kiryas Joel. (See, Grumet v Board of Educ., 81 NY2d 518, 528, supra.) The challenged statute neither creates nor requires the creation of the KJVSD and does not foreclose the creation of other school districts pursuant to its provisions. The contention of the plaintiffs that the KJVSD is presently the only district that can satisfy the statute’s requirements fails to demonstrate that no other municipality will be able to take advantage of the statute at a future time and thus fails to demonstrate that the enactment will likely be perceived as an endorsement of the Satmar sect. (Allegheny County v Greater Pittsburgh ACLU, 492 US 573, 595-597.)
The third prong of Lemon proscribing legislation that "fosters 'an excessive government entanglement with religion’ ” is clearly not implicated in this case. (Lemon v Kurtzman, 403 US, supra, at 613.) The statute does not "enmesh[ ] churches in the processes of government and create[ ] the danger of '[political fragmentation and divisiveness on religious lines’.” (Larkin v Grendel’s Den, 459 US 116, 127, supra; Lemon v Kurtzman, 403 US, supra, at 623.) There is no delegation of government power to religious bodies as in Larkin where churches were given veto power over liquor license applications. (See, Larkin v Grendel’s Den, 459 US, at 125.) Plaintiffs contend that the administration of the KJVSD by members of the Satmar sect leads to an "excessive entanglement.” In fact, the school superintendent is not a Satmar and beyond that, *653 the school created is required by law to be a public school in every sense and manner. Any school board whose members are coreligionists would appear to constitute an entanglement under the plaintiffs’ supposition, even when the evidence shows a complete absence of sectarian influence. The flaw in this argument is clear. An all-Satmar school board cannot alone make chapter 241 unconstitutional because "religious people (or groups of religious people) cannot be denied the opportunity to exercise the rights of citizens simply because of their religious affiliations or commitments, for such a disability would violate the right to religious free exercise.” (Kiryas Joel, 512 US, at —, 114 S Ct, at 2489, supra.)
The "constitutional concern” voiced in Kiryas Joel over the potential of the Legislature to fail "to exercise governmental authority in a religiously neutral way” (Kiryas Joel, 512 US, at —, 114 S Ct, at 2490-2491, supra) is eliminated by the religion-neutral statutory scheme of chapter 241. We now have the "assurance that the next similarly situated group seeking a school district * * * will receive one.” (Supra.)
"As Justice Jackson eloquently stated in West Virginia Board of Education v. Barnette, 319 U.S. 624, 642 (1943):
" 'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.’ ” (Wallace v Jaffree, 472 US 38, 55, supra.)
That basic truth, although tested, was not violated by the New York State Legislature. (Supra.) The Establishment Clause, and its guarantee, is sacred to our national identity. The principle that our religious and secular lives shall remain on separate and parallel courses is neither impaired nor debased by chapter 241’s enactment.

The Plaintiffs’ State Constitutional Claims

The plaintiffs have also challenged chapter 241 under article XI, § 3 of the New York Constitution which prohibits the use of public money "directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught.” (NY Const, art XI, § 3.) Plaintiffs do not argue that any "denominational *654 tenet or doctrine” is taught in the KJVSD school in violation of article XI, § 3. There are no facts in the record to support such an argument in any event. The issue, then, is whether the KJVSD is under the "control or direction” of the Satmar sect.
The plaintiffs contend that the District is under the de facto control of the Satmar sect because all members of the Board of Education are Satmar. Defendants contend that there is no proof that the school is run differently than any other public school; and that the Board of Education members may not be denied their rights to act in their elected civic capacities merely because they are coreligionists.
The "control or direction” clause of article XI, § 3 was construed in the case of Matter of College of New Rochelle v Nyquist (37 AD2d 461). Therein, the Court held that a college sponsored by a religious order was not under the control or direction of the religious order. (Supra, at 466-467.) Article XI, § 3 proscribes "state aid where the affiliated religious denomination controls or directs the institution toward a religious end; where the institution is controlled or directed to a degree so as to enable the religious authorities to propagate in advance — or at least attempt to do so — their religion. Mere affiliation or a sharing of administrative control by a denomination will not, in and of itself, bring the institution within the proscription of the statute; such a situation cannot be said to so 'pervade’ the atmosphere of the college as to effectuate religious control or direction by a religious denomination.” (Matter of College of New Rochelle v Nyquist, supra, at 466.)
Applying College of New Rochelle’s "totality of the circumstances” analysis (supra, at 467), it is clear that the plaintiffs here have failed to sustain their contention that the KJVSD is under the "control or direction” of the Satmar sect merely because the elected civic leaders and board members are members of the sect. There is no proof that Satmar tenets are being propagated in the Village public schools, or that religion "pervades” the school, or that it is being run with a religious end. The record suggests the direct opposite — the school is a public school in which secular subjects are taught by secular teachers in accordance with the Education Law. Moreover, as aforesaid, the Satmars may not be excluded from their elected civic posts merely because they are coreligionists as this would impinge their right of free exercise of religion. (Kiryas Joel, 512 US, at —, 114 S Ct, at 2488-2489, supra.)
*655 Therefore, plaintiffs’ claims under the State Constitution are no stronger than under the Establishment Clause of the Federal Constitution. This court is also cognizant of the jurisprudential policy that leaves to the Court of Appeals the function of determining that the State Constitution affords greater or different rights than the Federal Constitution. (People v Keta, 165 AD2d 172, 177-178.) This is especially warranted where, as here, there is no precedent for a broader construction of the State constitutional provision.
As the submissions of the plaintiffs fail to raise any factual issues that would call into question the constitutionality of the challenged statute, the court finds chapter 241 constitutional as a matter of law and grants summary judgment in favor of all defendants. (See, CPLR 3212 [b].) Plaintiffs’ complaint is hereby dismissed.

 See, Board of Educ. v Grumet, 512 US —, 114 S Ct 2481; Grumet v Board of Educ., 81 NY2d 518; Board of Educ. v Wieder, 72 NY2d 174.