[675 NYS2d 662]

Louis Grumet et al., Respondents, v George Pataki, as Governor of the State of New York, et al., Appellants.

Third Department, July 9, 1998

### APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany (*Julie S. Mereson* of counsel), for George Pataki and others, appellants.

*George Shebitz & Associates,* New York City, and *Miller, Cassidy, Larocca & Lewin, L. L. P.,* Washington, D.C. (*Nathan Lewin* of counsel), for Board of Education of the Kiryas Joel Union Free School District, appellant.

*Ingerman Smith, L. L. P.,* Northport (*Lawrence W. Reich* of counsel), for Monroe-Woodbury Central School District, appellant.

*Jay Worona,* Albany, for Louis Grumet and others, respondents.

*Marc D. Stern,* New York City, for American Jewish Congress, *amicus curiae.*

*Eric W. Treene,* Washington, D.C., for Becket Fund for Religious Liberty, *amicus curiae.*

*Dennis Rapps,* New York City, for National Jewish Commission on Law and Public Affairs, *amicus curiae.*

### OPINION OF THE COURT

Spain, J.

The legislation challenged in this action, chapter 390 of the

Laws of 1997, is the most recent in a series of attempts by the Legislature to create a constitutionally valid educational program which meets the special education needs of the disabled students residing in the Village of Kiryas Joel, Orange County. The Village, which lies entirely within the boundaries of the Monroe-Woodbury Central School District, is a community established by members of the Satmar Hasidic sect. When created, the Village boundaries were drawn to include only property owned and inhabited by Satmars, devoutly religious people whose lifestyle is shaped by their religious beliefs. The facts of this case have been more fully described in prior State and United States Supreme Court decisions (*see, e.g., Board of Educ. v Grumet*, 512 US 687 [hereinafter *Kiryas Joel I*]; *Grumet v Cuomo*, 90 NY2d 57 [hereinafter *Kiryas Joel II*]; *Board of Educ. v Wieder*, 72 NY2d 174).

At the core of this continuing controversy is a dispute over special education services between Monroe-Woodbury and the residents of the Village, whose children attend private religious schools within the Village. Because these parochial schools were not equipped to adequately educate the handicapped children of the Village, the Satmars initially relied on Monroe-Woodbury to provide these services and programs in an annex to one of the religious schools in the Village. After the United States Supreme Court found such programs unconstitutional in *Aguilar v Felton* (473 US 402) and *Grand Rapids School Dist. v Ball* (473 US 373), Monroe-Woodbury ceased offering on-site instruction. Thereafter, Monroe-Woodbury provided special education to the Village's handicapped children at its public school buildings located outside the Village. Eventually, most of the Village parents removed their children from the Monroe-Woodbury program because of, *inter alia*, the cultural and alleged emotional trauma experienced by these special needs children when exposed to the public school integrated classes (*see, Board of Educ. v Wieder, supra*, at 181).

Ultimately, the Legislature attempted to end this conflict by enacting chapter 748 of the Laws of 1989 (hereinafter chapter 748), which provided for the creation of a union free school district coterminous with the Village, designated as the Kiryas Joel Village School District (*see*, L 1989, ch 748, § 1). The new school district ran only a special education program, providing services for approximately 40 disabled children from the Village and over 150 additional Hasidic children residing in neighboring districts. All three levels of New York courts, i.e., Supreme Court (Kahn, J.), this Court and the Court of Ap-

peals, found chapter 748 unconstitutional (*Grumet v Board of Educ.*, 81 NY2d 518, *modfg* 187 AD2d 16, *affg Grumet v New York State Educ. Dept.*, 151 Misc 2d 60). On appeal, the United States Supreme Court affirmed, ruling that chapter 748 violated the Establishment Clause of the First Amendment to the US Constitution (*see, Kiryas Joel I, supra*).

Thereafter, in response to the holding of the United States Supreme Court, the Legislature passed chapter 241 of the Laws of 1994 (hereinafter chapter 241). Chapter 241 listed criteria related to, *inter alia*, enrollment and valuation by which municipalities were allowed to organize their own school districts (*see, Grumet v Cuomo*, 225 AD2d 4, 8-9, *affd* 90 NY2d 57, *supra; see also*, Education Law § 1504 [3], as added by L 1994, ch 241, § 1). Notably, chapter 241 was limited in application to municipalities already in existence (*see, Kiryas Joel II, supra*, at 67). Although Supreme Court (164 Misc 2d 644 [Kahn, J.]) found the new law constitutional, both this Court and the Court of Appeals declared it unconstitutional (*see, id.*, at 68, *affg* 225 AD2d 4). The Court of Appeals held that the statute's neutral language could not mask the fact that the law was so narrow that no other school district in the State could be established under its criteria (*see, id.*, at 69).

In yet another effort to remedy the constitutional flaws of the prior legislation, the Legislature passed chapter 390 of the Laws of 1997 (hereinafter chapter 390). Chapter 390 is similar to its predecessor, chapter 241, but includes certain changes aimed at broadening its application. Unlike the prior statute, the new law allows municipalities yet to be formed, which meet its criteria, to form new school districts and does not limit its immediate benefits to only one existing municipality. In August 1997, subsequent to the Governor's approval of the new statute, the Kiryas Joel Union Free School District was created.

Thereafter, claiming status as citizen taxpayers pursuant to the State Finance Law, plaintiffs commenced this action in Albany County against the Governor, the Education Department and its Commissioner, the State Board of Regents, the Comptroller, the District Superintendent of the Orange-Ulster BOCES (hereinafter collectively referred to as the State defendants), the Board of Education of the Kiryas Joel Union Free School District (hereinafter Kiryas Joel) and the Board of Education of Monroe-Woodbury. Plaintiffs challenged the constitutionality of chapter 390 under both Federal and State Constitutions. In October 1997, Kiryas Joel and Monroe-Woodbury moved for a change of venue from Albany County to

Orange County. In December 1997, plaintiffs moved for summary judgment, claiming, *inter alia*, that out of 1,545 municipalities State-wide, only two villages qualified. Supreme Court denied the motion for a change of venue and, in a separate decision, granted summary judgment and declared that chapter 390 was unconstitutional. Kiryas Joel and Monroe-Woodbury appeal the denial of a change in venue. The State defendants, Kiryas Joel and Monroe-Woodbury appeal the grant of summary judgment.

■ We affirm. Initially, we conclude that Supreme Court did not err in denying the applications for a change of venue. It is settled law that "[w]here there are conflicting venue provisions and one or more parties seeks a change of venue, it is given to the discretion of the court to select the proper venue" (*Matter of Hurst v Board of Educ.*, 242 AD2d 130; *see, Lawyers' Fund for Client Protection v Gateway State Bank*, 239 AD2d 826, 828, *lv dismissed* 91 NY2d 848; *see also*, CPLR 502). In this case, there are conflicting CPLR provisions. Actions against school boards shall be brought in the county where the school district is located (CPLR 504 [2]); however, State Finance Law § 123-c (1) requires that a citizen taxpayer's challenge be brought either where the disbursement of funds occurred or is likely to occur or where the State official has his or her principal office. CPLR 509 states that venue, unless changed, shall be in the county chosen by the plaintiff. Here, five of the eight named defendants are State agencies or State officials with principal offices in Albany County, and plaintiffs, citizen-taxpayers challenging legislation which provides educational funding to school districts, chose Albany County. In light of the foregoing, Supreme Court did not abuse its discretion in denying a change of venue.

■ Moving next to the merits, we reject defendants' assertion that chapter 390 is a neutral law which cured the constitutional deficiencies of chapter 241 and conclude that, as did its predecessors, the new statute lacks the neutrality toward religion mandated by the Establishment Clause of the First Amendment to the US Constitution. It is well settled that government action must be neutral and cannot favor one religion over another nor favor a religious adherent over a non-adherent (*see, Kiryas Joel I, supra,* at 696; *Kiryas Joel II, supra,* at 69; *Matter of Griffin v Coughlin*, 88 NY2d 674, 689-691, *cert denied* 519 US 1054; *see also*, US Const 1st, 14th Amends). "Equally well established is the principle that statutes of general applicability that extend their benefits

without regard to religion honor the neutrality requirement and are generally beyond Establishment Clause reproach" (*Kiryas Joel II, supra*, at 69). In *Kiryas Joel II*, the Court of Appeals clearly expressed its disapproval of the fact that chapter 241 was so narrow that only the Village qualified for its benefits and that no other group could likely ever qualify (*id.*, at 73). Here, the record supports the conclusion that the new statute applies to only two of the State's 1,545 municipalities.[1] Thus, chapter 390 is hardly a "truly religious-neutral law of general applicability * * * [available to] a broad array of eligible municipalities" (*id.*, at 75).

We also reject defendants' assertion that chapter 390 satisfies the *Lemon* test (*see, Lemon v Kurtzman*, 403 US 602, 612-613). The second criterion of the *Lemon* test, also called the "effect" or the "endorsement" prong, requires an assessment of the "character of the institutions benefited" (*Agostini v Felton*, 521 US 203, 232; *see, Lemon v Kurtzman, supra*, at 615). Under this prong, a statute will not pass Establishment Clause scrutiny if its "primary effect" is to advance or promote religion (*Lemon v Kurtzman, supra*, at 612). A reviewing court must look at the context of the State action in assessing whether it is a government endorsement of religion (*see, Kiryas Joel I, supra*, at 699; *Kiryas Joel II, supra*, at 75).

In the instant case, not only does the new statute apply to too few existing municipalities, its application to other municipalities in the future is speculative. Despite the provisions which extend the benefits of the statute to existing municipalities for which conditions may change in the future and to new municipalities yet to be formed, the "theoretical possibility" that other municipalities may qualify under the new statute in the future is, in our view, remote at best (*Kiryas Joel II, supra*, at 71). As to context, a review of the history of this legislation leads us to conclude that chapter 390, as its predecessors, clearly provides an impermissible preference to the Village in response to the Satmars' desire to provide their handicapped children with special education services in an

---

1. We find merit in plaintiffs' argument that cities do not qualify for the benefits of chapter 390, a fact supported by one of defendants' experts. Chapter 390 specifically states that it applies to "any municipality situated wholly within one central or union free school district" (L 1997, ch 390, § 1). Significantly, under the Education Law, school districts in cities with a population of less than 125,000 are small city school districts (Education Law § 2 [16]) and not central or union free school districts.

exclusive Satmar environment.[2] Chapter 390, despite its facial neutrality, violates the second prong of the *Lemon* test as its primary effect endorses the Satmars' religious beliefs.[3]

It is significant that in a recent decision, *Agostini v Felton* (*supra*), the United States Supreme Court provides a constitutionally viable option for the defendants in this action. *Agostini* overruled *Aguilar v Felton* (473 US 402, *supra*), the decision which caused Monroe-Woodbury to cease its on-site instruction of the special needs children of the Village. Consequently, Monroe-Woodbury, while not required to do so (*see, Board of Educ. v Wieder*, 72 NY2d 174, 189-190, *supra*), is no longer precluded from simply going into the parochial schools in the Village and setting up satellite special education programs as it did prior to *Aguilar v Felton* (*supra*). Moreover, the fact that the underlying reason for the creation of the challenged school districts has now been eliminated also supports plaintiffs' assertion that chapter 390 should be perceived as yet another improper endorsement by the Legislature in providing the Satmar community the continued existence of a publicly funded exclusive environment in which to educate their children in accordance with their religious preferences (*see, Kiryas Joel I, supra,* at 699; *Kiryas Joel II, supra,* at 75; *see also, Lynch v Donnelly,* 465 US 668, 690 [O'Connor, J., concurring]).

In summary, although the holdings in both *Kiryas Joel I* and *Kiryas Joel II* suggest that legislation achieving an "acceptable result" might be properly crafted, each of those cases concludes that such a school district must still be formed pursuant to a constitutionally permissible generally applicable law. In our view, chapter 390 does not encompass a sufficient number of municipalities to constitute the "broad array" suggested in *Kiryas Joel II* (*supra,* at 75); like its predecessors, it is an "impermissible governmental endorsement of this religious community" (*id.,* at 64).

In view of the foregoing conclusions, we need not address plaintiffs' remaining contentions.

---

2. Notably, the new law is inconsistent with the expressed public policy in this State which favors consolidating school districts (especially small self-contained school districts), not creating new ones (*see, e.g.,* Education Law § 314).

3. Supporting the conclusion that the new statute was intended to specifically benefit the Village is that the Assembly itself refers to chapter 390 as the "Kiryas Joel" bill (*see,* New York State Assembly's Session Highlights for 1997).

Accordingly, we affirm Supreme Court's grant of summary judgment in favor of plaintiffs.

MIKOLL, J. P., MERCURE, PETERS and CARPINELLO, JJ., concur.

Ordered that the order is affirmed, without costs.