OPINION OF THE COURT
Smith, J.
Plaintiffs, citizen taxpayers of this State, maintained this action against defendants Board of Education of the Kiryas Joel Village School District and Board of Education of the Monroe-Woodbury Central School District, challenging the enactment of chapter 748 of the Laws of 1989. That statute established a separate public school district in and for the Satmarer Hasidic Village of Kiryas Joel, Orange County.[1] Plaintiffs alleged that chapter 748 of the Laws of 1989 violates the Establishment Clause of the First Amendment of the Federal Constitution. Supreme Court granted plaintiffs’ summary judgment motion, concluding, inter alia, that chapter 748 of the Laws of 1989 has the effect of advancing the religious beliefs of the Satmarer Hasidim inhabitants of the *523 Village of Kiryas Joel. The Appellate Division affirmed (187 AD2d 16), determining that the challenged statute violates the second prong of the test in Lemon v Kurtzman (403 US 602). Defendants appeal as of right from the order of the Appellate Division which finally determines an action that directly involves the construction of the Federal Constitution (CPLR 5601 [b] [1]). The issue before us is whether chapter 748 of the Laws of 1989, entitled "an act to establish a separate school district in and for the village of Kiryas Joel, Orange county”, violates the Establishment Clause of the First Amendment of the Federal Constitution. We now modify the order of the Appellate Division, agreeing that the statute violates the Establishment Clause of the First Amendment of the Federal Constitution.
I.
The Village of Kiryas Joel was formed by, and is composed almost entirely of members of the Satmarer Hasidic sect. In addition to separation from the outside community, separation of the sexes is observed within the Village. Yiddish is the principal language of Kiryas Joel. No television, radio, or English language publications are generally used. There is a male and female dress code. For the most part, the children are educated in religiously affiliated schools. The boys attend the United Talmudic Academy and are educated in the Torah. The girls attend Bais Rochel and are instructed on what they will need to function as adult women (see, Board of Educ. v Wieder, 72 NY2d 174, 179-180). These differences have led to a series of court cases involving the Satmarer Hasidim.[2]
Prior to the decision of the United States Supreme Court in Aguilar v Felton (473 US 402 [1985]), the handicapped children living in Kiryas Joel received special education services *524 from Monroe-Woodbury Central School District personnel in an annex to one of the Kiryas Joel religious schools. In Aguilar, the United States Supreme Court considered whether a program under title I of the Elementary and Secondary Education Act of 1965 authorizing the use of Federal funds to pay salaries of public employees who teach in parochial schools violated the Establishment Clause of the First Amendment. Concluding that such a program was unconstitutional, the Court stated: "We have long recognized that underlying the Establishment Clause is 'the objective ... to prevent, as far as possible, the intrusion of either [church or state] into the precincts of the other * * *’ Lemon v. Kurtzman, supra, at 614” (id., at 413) and "the scope and duration of [the] Title I program would require a permanent and pervasive state presence in the sectarian schools receiving aid.” (Id., at 412-413.) In response to the Aguilar decision, the Monroe-Wood-bury Central School District stopped providing the special education programs at the religious school annex. For some time thereafter, some of the handicapped Satmarer Hasidic children attended special education classes held at the Monroe-Woodbury public schools. However, allegedly because of the "panic, fear and trauma [the children] suffered in leaving their own community and being with people whose ways were so different from theirs,” the parents stopped sending them to programs offered at the public schools (Board of Educ. v Wieder, 72 NY2d, at 181, supra).
In Board of Educ. v Wieder (supra) this Court construed Education Law § 3602-c[3] to authorize special education services to private school handicapped children and afford them an option of dual enrollment in public schools. We concluded that section 3602-c neither compels boards of education to make special education services available to private school handicapped children only in regular public school classes and programs, nor renders them powerless to provide otherwise (id., at 187).
Thereafter, the Legislature enacted chapter 748 of the Laws *525 of 1989, which created a new union free school district, the Kiryas Joel Village School District, in the Incorporated Village of Kiryas Joel in the Town of Monroe, Orange County. The newly established Kiryas Joel Village School District was coterminous with the Satmarer Hasidic community of Kiryas Joel, and was created within the boundaries of the MonroeWoodbury Central School District. Chapter 748 of the Laws of 1989 also established a board of education, composed of five to nine members elected by the voters of the Village, that would serve for a period not to exceed five years. Chapter 748 of the Laws of 1989 represents "an effort to resolve a longstanding conflict between the Monroe-W oodbury School District and the village of Kiryas Joel, whose population are all members of the same religious sect” (Governor’s Approval Mem, 1989 NY Legis Ann, at 324).
Plaintiffs Louis Grumet and Albert Hawk commenced this action individually, as citizen taxpayers, and as Executive Director of the New York State School Board Association, Inc. and President of the New York State School Boards Association, Inc., respectively, against the New York State Education Department and various State officials, alleging, inter alia, that chapter 748 of the Laws of 1989 violates the Establishment Clause of the First Amendment of the Federal Constitution. The Board of Education of the Kiryas Joel Village School District and the Board of Education of the Monroe-W oodbury Central School District intervened as defendants. The parties stipulated to a discontinuance of the action as to the State officials, but, pursuant to Executive Law § 71, the State Attorney-General continued to appear in this action in support of the constitutionality of chapter 748 of the Laws of 1989. Both parties sought summary judgment. On their motion, plaintiffs asserted that chapter 748 violates the Federal constitutional provisions prescribing separation of church and State. Defendants sought a judgment declaring the facial constitutionality of the statute.
Supreme Court granted plaintiffs’ summary judgment motion, concluding that the statute is unconstitutional because it "was enacted to meet exclusive religious needs and has the effect of advancing, protecting and fostering the religious beliefs of the inhabitants of the school districts and] * * * fosters excessive entanglements with religion” (Grumet v New York State Educ. Dept., 151 Misc 2d 60, 64). The Appellate Division affirmed, concluding that chapter 748 of the Laws of 1989 "authorizes a religious community to dictate where *526 secular public educational services shall be provided to children of the community [and] * * * creates the type of symbolic impact that is impermissible under the second prong of the Lemon test” (187 AD2d 16, 22, supra).
The prior courts concluded that plaintiffs fulfill the requirement for citizen-taxpayer status contained in State Finance Law § 123-a and, therefore, have standing to maintain this action. That conclusion is not contested on this appeal.
II.
Before this Court, defendants maintain that, based on Lemon v Kurtzman (supra), chapter 748 is constitutionally valid on its face.
The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion” (US Const 1st Amend). The First Amendment is made applicable to the States by the Fourteenth Amendment (see, Everson v Board of Educ., 330 US 1; Murdock v Pennsylvania, 319 US 105). It is said that the Establishment Clause of the First Amendment means at least that "[n]either a state nor the Federal Government * * * can pass laws which aid one religion, aid all religions, or prefer one religion over another” (Everson, 330 US 1, 15, supra). As such, Federal and State governments must "maintain a course of neutrality among religions, and between religion and non-religion” (Grand Rapids School Dist. v Ball, 473 US 373, 382).
In Lemon v Kurtzman (supra) the United States Supreme Court articulated a three-part test for evaluating the constitutionality of governmental actions under the Establishment Clause. The Court stated:
"Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, Board of Education v. Allen, 392 U.S. 236, 243 (1968); finally, the statute must not foster 'an excessive government entanglement with religion * * *’ Walz[ v Tax Commn., 397 US 664, 674]” (id., at 612-613).
The United States Supreme Court has "particularly relied on Lemon in every case involving the sensitive relationship *527 between government and religion in the education of our children” (Grand Rapids School Dist. v Ball, 473 US 373, 383, supra). Recently, the Court adhered to the Lemon test in Lamb’s Chapel v Center Moriches Union Free School Dist. (508 US —, 113 S Ct 2141, 124 L Ed 2d 352). Moreover, the Court has applied Lemon in considering whether prior courts were correct in concluding, on a motion for summary judgment, whether a statute was unconstitutional on its face (see, Bowen v Kendrick, 487 US 589, 602). Likewise, we have applied the Lemon test to statutes or regulations relating to the education of children, where such statutes or regulations are challenged as violating the Establishment Clause (see, New York State School Bds. Assn. v Sobol, 79 NY2d 333; Matter of Klein [Hartnett], 78 NY2d 662). Thus, we apply the Lemon test to examine whether the prior courts were correct in concluding that chapter 748 of the Laws of 1989 is unconstitutional on its face.
III.
While both parties have briefed the first prong of the Lemon test, and the Supreme Court found a violation of that prong, the Appellate Division relied exclusively on the second prong and found it violated by the statute here. Because we conclude that the second prong of Lemon has been clearly violated, we do not address the first prong.
As stated, the second prong of Lemon requires that the principal or primary effect of legislation be one that neither advances nor inhibits religion. Thus, we consider whether the principal or primary effect of the challenged statute advances or inhibits religion. It is clear that the prohibition against State involvement in religion is not limited to direct and funded efforts to indoctrinate citizens in specific religious beliefs but includes a close identification of the responsibilities of government and religion (see, Grand Rapids School Dist. v Ball, 473 US 373, 389, supra). In that case, the Supreme Court stated the following:
"Our cases have recognized that the Establishment Clause guards against more than direct, state-funded efforts to indoctrinate youngsters in specific religious beliefs. Government promotes religion as effectively when it fosters a close identification of its powers and responsibilities with those of any— or all — religious denominations as when it at *528 tempts to inculcate specific religious doctrines. If this identification conveys a message of government endorsement or disapproval of religion, a core purpose of the Establishment Clause is violated” (id., at 389).
In considering whether the principal or primary effect of the challenged statute advances or inhibits religion, the concern is "whether the symbolic union of church and state effected by the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by nonadherents as a disapproval, of their individual religious choices” (id., at 390). An inquiry into this kind of effect "must be conducted with particular care when many of the citizens perceiving the governmental message are children in their formative years [since t]he symbolism of a union between church and state is most likely to influence children of tender years” (id., at 390). Context determines whether a particular governmental action is likely to be perceived as an endorsement of religion (see, Allegheny County v Greater Pittsburgh ACLU, 492 US 573, 595-597). Governmental action "endorses” religion if it favors, prefers, or promotes it (see, Edwards v Aguillard, 482 US 578, 593; Wallace v Jaffree, 472 US 38, 59-60; Lynch v Donnelly, 465 US 668, 691).
Defendants assert that "[t]he relevant issue is whether an objective observer, acquainted with the text, legislative history, and implementation of the [challenged] statute, would perceive it as [the State’s endorsement of the Satmarer Hasidic faith]” (Wallace v Jaffree, 472 US 38, 76, supra [O’Connor, J., concurring]). However, as the dissent acknowledges, "the Supreme Court has not yet adopted Justice O’Connor’s [objective observer] nuance for detecting an [impermissible] endorsement” of religion by the State (dissenting opn, at 552). We agree with the majority of the Appellate Division that the statute not only authorizes a religious community to dictate where secular public educational services shall be provided to the children of the community, but also "creates the type of symbolic impact that is impermissible under the second prong of the Lemon test” (187 AD2d, at 22, supra).
Chapter 748 of the Laws of 1989 created a new union free school district, the Kiryas Joel Village School District, coterminous with the Incorporated Village of Kiryas Joel in the Town of Monroe, Orange County. This new school district was
*531 Because special services are already available to the handicapped children of Kiryas Joel, the primary effect of chapter 748 is not to provide those services, but to yield to the demands of a religious community whose separatist tenets create a tension between the needs of its handicapped children and the need to adhere to certain religious practices. Regardless of any beneficent purpose behind the legislation, the primary effect of such an extensive effort to accommodate the desire to insulate the Satmarer Hasidic students inescapably conveys a message of governmental endorsement of religion. Thus a "core purpose of the Establishment Clause is violated” (see, Grand Rapids School Dist. v Ball, 473 US 373, 389, supra).
Our conclusion does not, as the dissent declares, "drap[e] a drastic, new disability over the shoulders of young pupils solely on account of the religious beliefs of their community,” nor does it "penalize and encumber religious uniqueness” (see, dissenting opn, at 557). Special services are made available to the Satmarer student within the Monroe-Woodbury School District. Our decision does not impose any additional burdens on the students within Kiryas Joel; it simply determines that the Legislature may not treat the Satmarer community as separate, distinct and entitled to special accommodation.
IV.
The Supreme Court has noted that "[i]f a statute violates any of [the three Lemon] principles, it must be struck down under the Establishment Clause” (Stone v Graham, 449 US 39, 40-41). Thus, our conclusion that chapter 748 of the Laws of 1989 violates the second principle of Lemon makes it unnecessary for us to comment on whether the statute violates the first and third principles or to address appellants’ remaining contentions.
Without any separate analysis, the trial court declared the statute unconstitutional under article XI, § 3 of the State Constitution, suggesting that the provision is a "counterpart” to the Establishment Clause. The Appellate Division affirmed on both State and Federal constitutional grounds, although its discussion, like the trial court’s, was limited to the Establishment Clause. Moreover, in this Court the First Amendment is the subject of the parties’ focus. In these circumstances, we do not reach the State constitutional issue, which is based on a provision significantly different from the Establishment *532 Clause, both in text and history (see, Judd v Board of Educ., 278 NY 200) and we modify the Appellate Division order accordingly.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.

. Chapter 748 of the Laws of 1989, provides, in part:
"Section 1. The territory of the village of Kiryas Joel in the town of Monroe, Orange county, on the date when this act shall take effect, shall be and hereby is constituted a separate school district, and shall be known as the Kiryas Joel village school district and shall have and enjoy all the powers and duties of a union free school district under the provisions of the education law.
"§ 2. Such district shall be under the control of a board of education, which shall be composed of from five to nine members elected by the qualified voters of the village of Kiryas Joel, said members to serve for terms not exceeding five years.”

. See, e.g., Parents’ Assn. v Quinones, 803 F2d 1235 (the Second Circuit preliminarily enjoined implementation of a plan by the New York City Board of Education to provide Federally funded remedial education for handicapped girls from Beth Rachel school by closing off nine classrooms of a public school, and dedicating them to the use of the Hasidic girls); Bollenbach v Board of Educ., 659 F Supp 1450 (the District Court found that the deployment of only male bus drivers to the all-boys United Talmudic Academy had the primary effect of advancing religious beliefs); Board of Educ. v Wieder, 72 NY2d 174, supra (this Court concluded that Education Law § 3602-c neither compels the Board of Education of the Monroe-Wood-bury Central School District to nor prohibits the Board from providing private school handicapped children with special services at the private schools or at a neutral site).

. Education Law § 3602-c (2) provides, in part: "Boards of education of all school districts of the state shall furnish services to pupils who are residents of this state and who attend nonpublic schools located in such school districts, upon the written request of the parent, guardian or persons legally having custody of any such pupil.” Section 3602-c (1) (a) defines "services” as "instruction in the areas of gifted pupils, occupational and vocational education and education for students with handicapping conditions”.