[900 NYS2d 548]

In the Matter of STATE OF NEW YORK, Respondent, v DANIEL FARNSWORTH, Appellant.

Fourth Department, April 30, 2010

**APPEARANCES OF COUNSEL**

*Emmett J. Creahan, Director, Mental Hygiene Legal Service,* Utica (*Margot S. Bennett* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General,* Albany (*Zainab A. Chaudhry* of counsel), for respondent.

**OPINION OF THE COURT**

Pine, J.

At issue on this appeal is the constitutionality of Mental

Hygiene Law article 10 as applied to persons such as respondent who were convicted of certain designated felonies that were sexually motivated and were committed before the effective date of article 10 (§ 10.03 [f], [g] [4]). Because sexual motivation was not an element of the underlying designated felonies, article 10 requires that the sexual motivation be established at the civil commitment trial (Mental Hygiene Law § 10.07 [c]), where the standard of proof is clear and convincing evidence (§ 10.07 [d]). Respondent contends that the application of the clear and convincing standard instead of the reasonable doubt standard to the determination of the issue of sexual motivation violates his constitutional rights to due process of law and equal protection of the laws (US Const Amend XIV; NY Const, art I, §§ 6, 11). We reject those contentions and conclude that Supreme Court properly denied his motion to dismiss the article 10 petition.

I

Effective April 13, 2007, the New York Legislature enacted the Sex Offender Management and Treatment Act (SOMTA) (L 2007, ch 7). Section 10.01 of the Mental Hygiene Law, entitled "Legislative findings," states that the Legislature finds

> "[t]hat recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management. Civil and criminal processes have distinct but overlapping goals, and both should be part of an integrated approach that is based on evolving scientific understanding, flexible enough to respond to current needs of individual offenders, and sufficient to provide meaningful treatment and to protect the public" (§ 10.01 [a]).

The specified goals of the legislation were "to protect the public, reduce recidivism and ensure [that] offenders have access to proper treatment" (§ 10.01 [c]), and the Legislature recognized "[t]hat sex offenders in need of civil commitment are a different population from traditional mental health patients, who have different treatment needs and particular vulnerabilities" (§ 10.01 [g]).

In his Program Bill Memorandum, Governor Spitzer summarized the purpose of SOMTA:

> "This bill enacts [SOMTA], which establishes comprehensive reforms to enhance public safety by

allowing the State to continue managing sex offenders upon the expiration of their criminal sentences, either by civilly confining the most dangerous recidivistic sex offenders, or by permitting strict and intensive parole supervision of offenders who pose a lesser risk of harm. Treatment is mandated during both criminal and civil confinement and during the period of strict supervision. It also creates a new crime of a 'Sexually Motivated Felony,' and provides for enhanced terms of post-release [*sic*] supervision for all persons who commit felony sex offenses" (Bill Jacket, L 2007, ch 7, at 5; *see also* Senate Introducer Mem in Support, Bill Jacket, L 2007, ch 7, at 19).

Pursuant to Mental Hygiene Law § 10.07, a detained sex offender may be civilly committed if it is determined by clear and convincing evidence after a trial that the offender suffers from a mental abnormality, and the court thereafter concludes that the offender is a dangerous sex offender requiring confinement (§ 10.07 [d], [f]). "[A] '[d]etained sex offender' means a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony," including individuals who have been convicted of a sex offense as defined in section 10.03 (p), and those convicted of a designated felony that was sexually motivated and committed prior to the effective date of article 10 (§ 10.03 [g] [1], [4]). A sex offense as defined in section 10.03 (p) (1) includes an act or acts that constitute any felony defined in article 130 of the Penal Law, and a designated felony includes burglary in the second degree (§ 10.03 [f]).

> "[A] '[d]angerous sex offender requiring confinement' means a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (§ 10.03 [e]).

At the same time that the Legislature enacted article 10, it created a new crime under article 130 of the Penal Law, entitled sexually motivated felony (Penal Law § 130.91, added by L 2007, ch 7, § 29). That legislation also became effective on April 13, 2007, and subdivision (1) of section 130.91 provides that "[a]

person commits a sexually motivated felony when he or she commits [any of the designated felonies set forth in Mental Hygiene Law § 10.03 (f)] for the purpose, in whole or substantial part, of his or her own direct sexual gratification." Those individuals who commit any of the designated felonies *after* the effective date of article 10 will be included in the scope of article 10 only if they were convicted of the newly enacted sexually motivated felony (*see* Mental Hygiene Law § 10.03 [g] [1]; [p]). For those individuals, the element of sexual motivation, as with any element of a criminal offense, will have to be established beyond a reasonable doubt. With respect to those individuals who committed designated felonies *before* the effective date of article 10, however, the element of sexual motivation will have to be established at the civil commitment trial, where the applicable standard of proof is the lower clear and convincing standard (*see* § 10.03 [g] [4]; § 10.07 [d]).

## II

The facts of this case are not in dispute and may be stated briefly. On June 20, 2005, respondent was convicted upon a plea of guilty of two counts of burglary in the second degree (Penal Law § 140.25 [2]) and was sentenced to concurrent terms of incarceration. As respondent neared his release date, petitioner filed a sex offender civil management petition contending, inter alia, that the underlying facts of respondent's crimes revealed a sexual motivation. Petitioner alleged that respondent had admitted that he burglarized various homes with the intent to molest young children. Although respondent never actually molested the children, he admitted that, on one occasion, he had removed the clothes and diaper from a two-year-old child, but fled the scene when the child began to cry.

Respondent has a criminal history replete with evidence of sexually motivated offenses. At age 15, he sexually abused two eight-year-old boys in his neighborhood. At age 19, he was observed masturbating in front of young boys while at a YMCA, and he violated his sentence of probation by refusing sex offender treatment. When respondent was 21, he was arrested for trespassing at a church and daycare facility and was found to be in possession of a photo album containing the pictures of small children who attended the church and daycare. Shortly after that arrest, respondent engaged in the conduct that resulted in the burglary convictions. When arrested for the burglaries, he was located near a school where, over the course of several months, he had been observed watching the children.

Petitioner alleged that respondent was a detained sex offender who fell within the ambit of article 10 because he was convicted of a designated felony under Mental Hygiene Law § 10.03 (f) "that was sexually motivated and [was] committed prior to the effective date of [article 10]" (§ 10.03 [g] [4]; *see also* § 10.03 [p] [4]). As previously noted, respondent moved to dismiss the petition on the ground that his constitutional rights to due process and equal protection were violated. According to respondent, the reasonable doubt standard should be applied to prove the element of sexual motivation, rather than the lower clear and convincing standard. That contention has not been conclusively addressed by any state court in New York, although one federal district court has addressed that contention in the context of determining whether to grant a preliminary injunction (*Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, *4, 2007 US Dist LEXIS 85163, *12 [SD NY 2007], *affd* 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir 2009]). The District Court granted in part and denied in part plaintiffs' motion for a preliminary injunction. With respect to those individuals convicted of designated felonies before the effective date of article 10, the District Court concluded that, on the record before it, plaintiffs had not demonstrated a likelihood of success on the merits with respect to their contention that the application of the clear and convincing standard to prove the sexual motivation element violated due process (2007 WL 4115936, *26, 2007 US Dist LEXIS 85163, *93-97). The District Court also concluded that there was a rational basis for the disparate treatment of those individuals convicted before and after the effective date of article 10 and thus rejected plaintiffs' equal protection argument (2007 WL 4115936, *26 n 34, 2007 US Dist LEXIS 85163, *97 n 34). For the reasons that follow, we conclude that the order in this proceeding should be affirmed.*

---

* The same due process infirmity that respondent alleges in this proceeding would apply equally to an individual charged with a sex offense who has been determined to be an incapacitated person (*see* Mental Hygiene Law § 10.03 [g] [2]). In that instance, Mental Hygiene Law § 10.07 (d) provides that the Attorney General may establish by clear and convincing evidence that the individual in fact engaged in the conduct constituting the criminal offense. Thus, for incapacitated persons, the elements of the past criminal offense will be established by clear and convincing evidence only. For individuals convicted of, inter alia, a sexual offense, including the newly enacted sexually motivated felony, or those determined to be not guilty by reason of mental disease or defect, the commission of the elements of the past criminal offense, however, has already been established beyond a reasonable doubt (*see Jones v United*

## III

"There is a strong presumption that legislative enactments are constitutional" (*People v Knox*, 12 NY3d 60, 69 [2009], cert denied 558 US —, 130 S Ct 552 [2009]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 150; *Dalton v Pataki*, 5 NY3d 243, 255 [2005], *rearg denied* 5 NY3d 783 [2005], *cert denied* 546 US 1032 [2005]). "While the presumption is not irrefutable, parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity 'beyond a reasonable doubt' " (*LaValle v Hayden*, 98 NY2d 155, 161 [2002], quoting *People v Tichenor*, 89 NY2d 769, 773 [1997], *cert denied* 522 US 918 [1997]; *see Dalton*, 5 NY3d at 255).

The due process challenge advanced by respondent concerns the procedure used to secure his commitment. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment" (*Mathews v Eldridge*, 424 US 319, 332 [1976]). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' " (*id.* at 333, quoting *Armstrong v Manzo*, 380 US 545, 552 [1965]). Due process, however, "is not a technical conception with a fixed content unrelated to time, place and circumstances" (*Cafeteria & Restaurant Workers v McElroy*, 367 US 886, 895 [1961], *reh denied* 368 US 869 [1961] [internal quotation marks omitted]; *see Mathews*, 424 US at 334). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands" (*Morrissey v Brewer*, 408 US 471, 481 [1972]; *see Mathews*, 424 US at 334). The Supreme Court has held that

> "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

*States*, 463 US 354, 363-364 [1983]; *People v Lancaster*, 69 NY2d 20, 29 [1986], *cert denied* 480 US 922 [1987]).

requirement would entail" (*Mathews*, 424 US at 335; *see Mental Hygiene Legal Serv.*, 2007 WL 4115936, *4, 2007 US Dist LEXIS 85163, *13-14).

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause . . . 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection' . . . We have always been careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty" (*Foucha v Louisiana*, 504 US 71, 80 [1992]).

" 'The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement' . . . Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed" (*id.* at 79; *see Addington v Texas*, 441 US 418, 425 [1979] ["'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"]). The ultimate issue before us on this appeal is the appropriate standard of proof to be applied to the "backward-looking factual finding required for commitment" as a dangerous sex offender requiring commitment pursuant to Mental Hygiene Law § 10.03 (g) (4) (*United States v Shields*, 522 F Supp 2d 317, 330 [D Mass 2007]).

## IV

The Supreme Court has addressed the due process requirements for civil commitment proceedings.

"In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the risk of erroneous decisions" (*Addington*, 441 US at 425).

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society

thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication' . . . The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision" (*id.* at 423, quoting *In re Winship*, 397 US 358, 370 [1970, Harlan, J., concurring]).

"*Addington* teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants" (*Santosky v Kramer*, 455 US 745, 755 [1982]).

In addressing the due process requirements for civil commitment proceedings, the Court in *Addington* and *Santosky* relied heavily on its decision in *Winship*, wherein the Court addressed the standard of proof required in civil juvenile delinquency proceedings (397 US 358 [1970]). In *Winship*, the Supreme Court reversed the order of the New York Court of Appeals in *Matter of Samuel W.* (24 NY2d 196 [1969]). In *Samuel W.*, the New York Court of Appeals had approved a preponderance of the evidence standard of proof for such proceedings based on the fact that the delinquency proceedings were not criminal and a delinquency finding was not the equivalent of a criminal conviction (*Winship*, 397 US at 365). The Supreme Court, however, recognized that the private interests at stake, i.e., loss of liberty and stigmatization, were the same in both criminal prosecutions and juvenile delinquency proceedings (*id.* at 363). The Court noted that "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts" (*id.* at 365-366). Because the loss of individual liberty was as great for juvenile delinquents as for criminals and because the application of the higher reasonable doubt standard would not adversely impact the government's prosecution of the juvenile, the Court held that due process required the application of the higher, reasonable doubt standard (*id.* at 366-367).

*Winship* informs our analysis in this case because it involves the application of a due process analysis to a civil proceeding that results in the loss of liberty and significant stigma, and many cases addressing the due process standard required for sexual offender commitment statutes have relied on the *Winship* analysis (*see e.g. Addington*, 441 US at 423; *United States v*

*Comstock*, 507 F Supp 2d 522, 551-553 [2007], *affd* 551 F3d 274 [2009], *cert granted* 557 US —, 129 S Ct 2828 [2009]; *Mental Hygiene Legal Serv.*, 2007 WL 4115936,*18-19, 2007 US Dist LEXIS 85163, *64-66). We note that in *Addington*, however, the Supreme Court wrote that, "[u]nlike the delinquency proceeding in *Winship*, a civil commitment proceeding can in no sense be equated to a criminal prosecution" (441 US at 428). The goals of civil commitment are meaningful treatment of sex offenders and the protection of the public (*see* Mental Hygiene Law § 10.01; *Jones v United States*, 463 US 354, 368 [1983]). The goals of criminal punishment, however, are retribution, rehabilitation, deterrence, and prevention (*see United States v Brown*, 381 US 437, 458 [1965]).

The Supreme Court has upheld civil commitment statutes that rely on a clear and convincing standard of proof (*Addington*, 441 US at 431-433). In upholding such statutes, the Court expressly noted that civil commitment statutes have layers of review and continuing opportunities for release (*id.* at 428-429). The Court in *Addington* juxtaposed criminal cases, where the inquiry concerning guilt is fact-based, against civil commitment cases, where the inquiry is whether the person suffered from a mental illness and, if so, whether the person presented a danger to himself or herself, or to others (*id.* at 429). The Court wrote that, "[g]iven the lack of certainty and the fallibility of psychiatric diagnosis, there is a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous" (*id.*). Indeed, the Court in *Addington* stated that the reasonable doubt standard functioned in criminal proceedings only because that standard was "addressed to specific, knowable facts" (*id.* at 430).

In *Kansas v Hendricks* (521 US 346 [1997]), the Supreme Court analyzed a civil commitment statute specifically focused on sexually violent predators. The Kansas statutes (Kan Stat Ann, ch 59, art 29A) permitted civil commitment for those convicted or charged with a sexually violent offense. Sexually violent offenses included various sex offenses and "any act which either at the time of sentencing . . . or subsequently during civil commitment proceedings . . . has been determined beyond a reasonable doubt to have been sexually motivated" (§ 59-29a02 [e] [13]). The statute also required that a court or jury determine whether the person was a sexually violent predator beyond a reasonable doubt (§ 59-29a07 [a]).

The Court in *Hendricks* was called upon to address whether due process permitted the commitment of those with a mental

abnormality or personality disorder not rising to the level of mental illness (521 US at 356-357). Although the Court did not address the standard of proof required for commitment in upholding the constitutionality of the statute, the Court otherwise noted that the statute specifically required proof beyond a reasonable doubt (*id.* at 352-353). Because the Kansas statute required evidence of past sexually violent behavior that had been established beyond a reasonable doubt and a present mental condition creating a likelihood of future sexually violent conduct (*id.* at 357), the Court found that the Kansas statute was "plainly of a kind with . . . other civil commitment statutes [requiring] a finding of future dangerousness, and then link-[ing] that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his [or her] dangerous behavior" (*id.* at 358). While the *Hendricks* case upholds the general premise that sexually violent offenders may be civilly committed, it does not address the specific issue in this case, to wit: whether due process requires that all of the elements of the past offense be established beyond a reasonable doubt.

## V

As previously noted, we have found only one case addressing that specific issue insofar as it deals with article 10. In *Mental Hygiene Legal Serv.* (2007 WL 4115936, 2007 US Dist LEXIS 85163), Judge Gerard E. Lynch was asked to grant preliminary injunctive relief and a temporary restraining order barring commitment of, inter alia, those individuals convicted of designated felonies that were sexually motivated and were committed before the effective date of article 10 and those individuals who were deemed incompetent to stand trial on the underlying sexual offense charges (2007 WL 4115936, *1-2, 2007 US Dist LEXIS 85163, *1-5).

Judge Lynch recognized that for those individuals the proof of some or all of the elements of the underlying criminal offense would have to be established at the civil commitment hearing, where the standard of proof is the lower clear and convincing standard (2007 WL 4115936, *17-26, 2007 US Dist LEXIS 85163, *60-98). Judge Lynch analyzed *Winship*, noting that the Supreme Court "has made clear that a legislature's declaration of the civil nature of confinement may be overcome only where there is 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the state's]

intention' to deem it civil" (2007 WL 4115936, *1-2, 2007 US Dist LEXIS 85163, *66, quoting *Hendricks*, 521 US at 361). Thus, Judge Lynch held that "[d]ue process therefore requires that when an individual is subject to the stigma of being labeled a 'sexual offender' and of a finding that he violated a criminal law triggering the possibility of institutional confinement, proof that he [or she] in fact committed the acts that form the basis for being labeled an 'offender' must be made beyond a reasonable doubt" (2007 WL 4115936, *21, 2007 US Dist LEXIS 85163, *73-74). Because those individuals who had been deemed incompetent had not been convicted of the crimes of which they were accused and their ability to assist in the article 10 proceedings was questionable (2007 WL 4115936, *20, 2007 US Dist LEXIS 85163, *71), Judge Lynch granted the preliminary injunction with respect to that portion of Mental Hygiene Law § 10.07 (d) applying the clear and convincing standard of proof to those individuals (2007 WL 4115936, *21, 2007 US Dist LEXIS 85163, *74).

With respect to those convicted of designated felonies before article 10 became effective, Judge Lynch did not reach the same result. Because those individuals had already been convicted of a serious crime beyond a reasonable doubt and thus had already faced the loss of liberty and stigma associated with such a conviction (2007 WL 4115936, *23, 2007 US Dist LEXIS 85163, *82-83), he noted that the only further determination needed was that the felony for which the person was convicted was "sexually motivated" (*id.*). Applying the three factors set forth in *Mathews*, Judge Lynch determined that the liberty interest at stake had already been compromised by the criminal conviction; that there was little risk of an erroneous finding that the individual was a sex offender because of the narrowness of the issue and the small population of individuals who would fall within that category; and that there was little justification for the lower standard of proof because, for those convicted after the effective date of article 10, the sexual motivation element would have to be established beyond a reasonable doubt as part of the newly enacted sexually motivated felony statute (2007 WL 4115936, *23-24, 2007 US Dist LEXIS 85163, *82-87; *see* Penal Law § 130.91).

Despite the fact that Judge Lynch questioned the constitutionality of applying the lower standard to those convicted of designated felonies before the effective date of article 10, he denied injunctive relief for that category of offenders. Judge

Lynch reasoned that, because *Addington* permitted commitment of individuals based only on a finding of mental illness and dangerousness and applying only the clear and convincing standard, it appeared

> "somewhat anomalous to hold that a state may not civilly commit or subject to an extended treatment regime an individual who has already been convicted of a serious crime based on clear and convincing evidence that he [or she] is mentally abnormal and dangerous, along with the additional finding that his [or her] previous crime was committed with a sexual motivation" (2007 WL 4115936, *26, 2007 US Dist LEXIS 85163, *94-95).

Thus, for that narrow category of offenders who were convicted of designated felonies before the effective date of article 10, Judge Lynch concluded that the plaintiffs had not demonstrated a likelihood of success on the merits (2007 WL 4115936, *26, 2007 US Dist LEXIS 85163, *95-96). The Second Circuit affirmed the order of Judge Lynch, noting that its conclusion, "like any ruling on a preliminary injunction, [did] not preclude a different resolution . . . on a more fully developed record" (2009 WL 579445, *2, 2009 US App LEXIS 4942, *4).

In our view, the decision of Judge Lynch in *Mental Hygiene Legal Serv.* is well reasoned and discusses all of the relevant law on due process. We conclude, however, that he relied too heavily on a *Winship* analysis. It is true that a criminal conviction or conduct that would result in a criminal conviction if the offender were competent to stand trial are prerequisites to the application of article 10. Thus, the comparison to juvenile delinquents in *Winship* is understandable. As we previously noted, however, the Supreme Court in *Addington* recognized that civil commitment statutes have layers of review and continuing opportunities for release (441 US at 428-429). Although the Court in *Addington* wrote that civil commitment proceedings could "in no sense be equated to a criminal prosecution" (*id.* at 428), the Court in that case was reviewing a civil commitment statute that focused on mental illness and dangerousness, concepts that are based on psychiatric diagnoses. As Judge Lynch recognized in *Mental Hygiene Legal Serv.*, article 10 commitments are predicated on criminal conduct. Thus, article 10 cases, as opposed to other civil commitment cases, are more analogous to the juvenile delinquency proceedings at issue in *Winship*. The next issue for our determination

is whether they are so analogous as to require the application of the reasonable doubt standard for all fact-based determinations concerning the past conduct.

## VI

As did Judge Lynch in *Mental Hygiene Legal Serv.*, we will address the three factors set forth in *Mathews*.

The first factor is the private interests affected by the official action. Here, the most significant private interests affected are personal liberty and freedom from confinement. The *Addington* decision has established that those interests, while fundamental in nature, are subordinate to the interests of protecting society from those who have been deemed mentally ill and dangerous based on clear and convincing evidence (*see* 441 US at 428-429). Thus, there is no requirement that a person even commit a criminal offense before being deprived of liberty. The Supreme Court in *Hendricks* also permitted the application of a clear and convincing standard insofar as it concerned mental abnormalities or personality disorders not rising to the level of a mental illness (521 US at 356-360). In *Hendricks*, however, the Kansas statute required that all of the elements of the past sexually violent conduct be established beyond a reasonable doubt, and thus *Hendricks* does not stand for the proposition that the application of a lower standard of proof for those retrospective factual determinations is proper.

■ In our view, it is significant that the Supreme Court in *Addington* recognized that states could choose to impose a higher standard of proof but that a higher standard was not constitutionally required (*see* 441 US at 430-431). The Court recognized that "[t]he essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold" (*id.* at 431). While there is a minimum level of protection below which no state can go, the fact that some states provide greater protections does not require New York to do the same. Because the Supreme Court has upheld the application of the clear and convincing standard as a basis for the civil commitment of individuals and the deprivation of their personal liberty, we conclude that the first *Mathews* factor, the significance of the personal interests affected, does not mandate application of the reasonable doubt standard.

With respect to the second *Mathews* factor, the risk of an erroneous deprivation of the individual's private interests and the

value of additional safeguards, we recognize that the determination of sexual motivation is fact-based and, unlike issues of mental illness and future dangerousness, it is a determination capable of being proven beyond a reasonable doubt (*see Mental Hygiene Legal Serv.*, 2007 WL 4115936, *22, 2007 US Dist LEXIS 85163, *80). As Judge Lynch noted, those convicted of designated felonies before the effective date of article 10 have already been found guilty of a serious felony beyond a reasonable doubt (2007 WL 4115936, *23, 2007 US Dist LEXIS 85163, *83). Thus, the risk of an erroneous deprivation of liberty is significantly lower with respect to those individuals. The only factual issue remaining is whether the prior felony was committed with a sexual motivation. Recognizing that the standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision" (*Addington*, 441 US at 423), we conclude that the application of the clear and convincing standard does not create an unacceptable risk of an erroneous deprivation of liberty. Although the application of the higher standard of proof may serve as an additional safeguard, we conclude that its application would not add appreciably to the effectiveness of Mental Hygiene Law article 10 as a whole. Our conclusion in that respect is intertwined with the analysis of the third factor in *Mathews*.

With respect to that third factor, we conclude that the application of the higher standard would not seriously impede the State's goal of committing sex offenders who pose a threat to society because of their inability to control their behavior. The higher standard is applied almost exclusively to the other individuals who fall within the ambit of article 10 and, contrary to petitioner's contention, the application of the two different standards would not confuse a jury. We note that numerous states specifically require that a judge or jury first determine the sexual motivation element beyond a reasonable doubt before proceeding to determine the overall need for civil commitment (*see e.g.* Ariz Rev Stat Ann § 36-3707 [A]; Fla Stat Ann § 394.912 [9] [h]; Iowa Code Ann § 229A.2 [10] [g]; Kan Stat Ann § 59-29a02 [e] [13]; Tex Health & Safety Code Ann § 841.002 [8]; Wash Rev Code § 71.09.020 [17]; Wis Stat Ann § 980.01 [6]; § 980.05 [3] [b]). Thus, we recognize that New York could have provided for the higher standard without any major fiscal or administrative burdens.

Nevertheless, although New York could have imposed the higher standard of proof, the issue before us is whether New

York's failure to do so violates an individual's due process rights. We conclude that it does not. The application of the lower standard of proof for the one element of sexual motivation does not, in our view, increase or decrease the scope of Mental Hygiene Law article 10 in any substantial way, nor does it improperly allocate the risk of error between New York State and a respondent (*see Addington*, 441 US at 423). The evidence of sexual motivation likely will be established through the trial transcript, the plea proceeding transcript or, as in this case, by a confession signed and sworn to by the respondent, a former criminal defendant. If the record contains such evidence, then we envision that there will be a finding, under either standard, of sexual motivation. If the record lacks such evidence, then we envision that there will be a finding, under either standard, that sexual motivation was absent.

## VII

Like the District Court in *Mental Hygiene Legal Serv.*, we cannot conclude that due process requires that all of the elements of a past conviction be established beyond a reasonable doubt, in view of the fact that the Supreme Court has held that an individual may be committed based on clear and convincing evidence that such individual is mentally ill and dangerous, without proof of any prior criminal conviction at all.

We acknowledge that the courts of the United States are split, and that the states with sex offender commitment statutes overwhelmingly provide for a reasonable doubt standard when addressing the retrospective factual determination. Indeed, we have provided citations to the statutes of some of those states.

We also note, however, that the federal statute and some states, including Minnesota, North Dakota, and Oregon, do not require any conviction and apply the lower clear and convincing standard (*see* 18 USC § 4248; Minn Stat Ann § 253B.01 *et seq.*; ND Cent Code Ann § 25-03.3-01 *et seq.*; Or Rev Stat § 426.005 *et seq.*). The federal statute applies to any individual in the custody of the Bureau of Prisons because of a conviction or because that individual is awaiting a determination of competence, and it also applies to any individual whose criminal charges were dismissed based on his or her mental condition. The statute permits commitment upon a finding, by clear and convincing evidence, that the individual is sexually dangerous. A " 'sexually dangerous person' [within the meaning of that statute is] a person who has engaged or attempted to engage in

sexually violent conduct or child molestation and who is sexually dangerous to others" (18 USC § 4247 [a] [5]). Federal courts are split on whether the clear and convincing standard comports with due process (*see United States v Carta*, 503 F Supp 2d 405, 409-410 [2007], *affd* 592 F3d 34, 43 [1st Cir 2010]; *United States v Comstock*, 507 F Supp 2d 522, 551-552 [2007], *affd* 551 F3d 274 [4th Cir 2009], *cert granted* 557 US —, 129 S Ct 2828 [2009]; *United States v Abregana*, 574 F Supp 2d 1123, 1135-1136 [D Haw 2008]; *Shields*, 522 F Supp 2d at 330-331).

## VIII

Based on the foregoing, we conclude that, while it may have been preferable for the Legislature to have imposed the higher reasonable doubt standard for all "backward-looking factual finding[s]" (*Shields*, 522 F Supp 2d at 330), due process does not require the application of that standard.

## IX

██ We likewise conclude that the statute does not violate respondent's constitutional right to equal protection. A person raising an equal protection challenge must first establish the applicable level of scrutiny, which is determined by whether the statute involves a suspect class or interferes with the exercise of a fundamental right (*see generally Affronti v Crosson*, 95 NY2d 713, 718-719 [2001], *cert denied* 534 US 826 [2001]). We note at the outset that "[t]he Supreme Court has not squarely addressed the appropriate level of scrutiny to apply to civil commitment statutes" (*Shields*, 522 F Supp 2d at 340).

Respondent does not identify the suspect class to which he allegedly belongs or the fundamental right that is purportedly implicated. Based on the reasoning of Chief Judge Kaye in her concurring opinion in *Grumet v Board of Educ. of Kiryas Joel Vil. School Dist.* (81 NY2d 518, 534 [1993], *affd* 512 US 687 [1994]), we conclude that respondent does not belong to a suspect class. We conclude, however, that Mental Hygiene Law article 10 interferes with a fundamental right. "Fundamental rights are those 'deeply rooted in this Nation's history and tradition' . . . They include the right to marry . . . ; the right to have children . . . ; the right to decide how one's children will be educated . . . ; and the right to engage in private consensual sexual activity" (*Knox*, 12 NY3d at 67). Fundamental rights are not "implicated every time a governmental regulation intrudes on an individual's 'liberty' " (*Immediato v Rye Neck School*

*Dist.*, 73 F3d 454, 463 [1996], *cert denied* 519 US 813 [1996]; *see Knox*, 12 NY3d at 66-67), but the Supreme Court has held that "[f]reedom from physical restraint [is] a fundamental right" (*Foucha*, 504 US at 86; *see Anonymous v City of Rochester*, 56 AD3d 139, 146 [2008], *affd* 13 NY3d 35 [2009]; *cf. United States v Weed*, 389 F3d 1060, 1071 [2004]; *Shields*, 522 F Supp 2d at 340; *Carta*, 503 F Supp 2d at 408).

Where, as here, a fundamental right is implicated, then a statute "will be sustained only if it is narrowly tailored to serve a compelling state interest" (*Hernandez v Robles*, 7 NY3d 338, 375 [2006]; *see Golden v Clark*, 76 NY2d 618, 623-624 [1990]; *Immediato*, 73 F3d at 460). It is undisputed that New York State has a compelling interest in committing and treating those who are mentally ill and dangerous to themselves or others (*see Matter of K.L.*, 1 NY3d 362, 370 [2004]; *Rivers v Katz*, 67 NY2d 485, 495-496 [1986], *rearg denied* 68 NY2d 808 [1986]; *see generally Addington*, 441 US at 426), and we conclude that Mental Hygiene Law § 10.07 (d) as it applies to those detained sex offenders who were convicted of designated felonies that were sexually motivated and committed before the effective date of article 10 is narrowly tailored to serve the State's interest. Those individuals are equally as dangerous as those who commit the newly enacted sexually motivated felony. Based on the Ex Post Facto Clause of the US Constitution, however, the State could not have tried and convicted anyone of the sexually motivated felony before it was enacted, nor may it retroactively seek to obtain such a conviction (*see generally* US Const, art I, § 10 [1]).

Because the statute survives under the strict scrutiny required when a fundamental right is implicated, the statute necessarily survives the lower level of scrutiny that would be required where, as here, no suspect class is identified (*see Nordlinger v Hahn*, 505 US 1, 10 [1992]; *Affronti*, 95 NY2d at 718-719).

## X

Based on the foregoing, we conclude that respondent has failed to meet his "initial burden of demonstrating the statute's invalidity 'beyond a reasonable doubt' " (*LaValle*, 98 NY2d at 161, quoting *Tichenor*, 89 NY2d at 773; *see Dalton*, 5 NY3d at 255). Accordingly, we conclude that the order denying respondent's motion to dismiss the petition should be affirmed.

CENTRA, J.P., FAHEY, CARNI and GREEN, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.